## No. 9741.

### WISWALL v. GIROUX ET AL.

Decided April 4, 1921. Rehearing denied May 2, 1921.

Action on promissory note and renewal agreement. Judgment for defendants.

### Reversed.

1. APPEAL AND ERROR—*Assignments of Error*. Under an assignment of error based on the ground that "the court erred in directing the jury to return a verdict for defendants," which was also incorporated in the motion for a new trial, any and all errors carried by the instruction referred to, were brought to the attention of the court, and are properly before the appellate tribunal for determination.

2. BILLS AND NOTES—*Promissory Note—Renewal Agreement—Equitable Assignment*. The endorsement and transfer of a promissory note carries with it a valid written agreement of third parties to pay the obligation, in consideraton of an extension of the time of maturity, and this occurs by operation of law, regard-

less of whether there is any separate assignment of the agreement or not.

*Error to the District Court of Boulder County, Hon. Neil F. Graham, Judge.*

Mr. F. B. TIFFANY, for plaintiff in error.

Messrs. GOSS, KEMP and HUTCHINSON, for defendants in error.

*En banc.*

MR. JUSTICE BAILEY delivered the opinion of the court.

PLAINTIFF, Alexander Wiswall, brought suit to recover judgment upon a certain promissory note. At the close of the testimony the court directed a verdict for the defendants. Plaintiff assigns error and brings the case here for review. The parties are designated as in the trial court.

The note was made, executed and delivered on March 20, 1909, by George H. Collins and Abbie E. Collins, payable three years after date and secured by trust deed on certain real property in Boulder County. In January, 1910, George H. Collins conveyed such real property by warranty deed to defendants J. P. Giroux and Alvah E. Collins, subject to the deed of trust.

On March 20th, 1912, the defendants herein entered into an agreement whereby they undertook to pay the interest on said note, from time to time as it should fall due, and the principal on March 20th, 1914, which agreement is as follows:

"Whereas on the 20th day of March, 1909, George H. Collins and Abbie E. Collins of Boulder, made and delivered their certain promissory note dated on said day, payable three years thereafter to the order of The Mercantile Bank and Trust Company, in the sum of Fifteen Hundred ($1,500.00) Dollars, with interest as stated in said note, and to secure the payment thereof, said George H. Collins executed and delivered a deed of trust to Albert A. Reed, Trustee, of even date with said note, which deed

of trust is recorded in the Public Records of Boulder County in Book 334 at page 223.

"And whereas said premises are now owned by J. P. Giroux and A. E. Collins, and are about to be conveyed to C. C. Gross and Louisa J. Gross,

"And whereas, said note is this day due, and the parties in interest desire to obtain an extension of the time of the payment thereof, now, therefore:

"This agreement made this 20th day of March, 1912, by and between The Mercantile Bank and Trust Company, a corporation doing business in the county of Boulder and State of Colorado, party of the first part and J. P. Giroux, A. E. Collins, C. C. Gross, Louisa J. Gross of Boulder, Colorado; in consideration of the premises and of the mutual promises herein contained, Witnesseth:

"Party of the first part agrees that the time of payment of said promissory note shall be extended for a period of two years, so that said note shall become due March 20, 1914.

"The parties of the second part agree to pay interest on said note from time to time, as the same shall become due, and to pay the principal of said note on the 20th of March, 1914.

"It is mutually understood and agreed that all the terms and provisions of said note, and deed of trust, save only the time of payment of the principal of said indebtedness, shall remain in full force and effect.

"The party of the first part hereby reserves all rights and remedies against said George H. Collins and Abbie E. Collins.

"In witness whereof this memorandum has been subscribed.

(Signed)    Mercantile Bank and Trust Company,
By L. E. Chenault, Cashier.
J. P. Giroux,
Louisa J. Gross,
C. C. Gross,
A. E. Collins."

The note, the time of payment of which was extended by the above agreement, is as follows:

"Three (3) years after date we promise to pay to the order of The Mercantile Bank and Trust Company One Thousand Five Hundred and no/100 * * * Dollars together with interest thereon from date at the rate of seven per cent per annum, payable June 15th and December 15th, both principal and interest payable at the office of The Mercantile Bank and Trust Company in the City of Boulder, Colorado. Value Received.

"After maturity this note shall draw interest at the rate of ten per cent per annum. In case this note shall be collected by an attorney, whether by suit or otherwise, there shall be added to the principal hereof for attorney's fees a sum equal to ten per cent of the face of this note.

"Presentment for payment and notice of dishonor are hereby expressly waived.

"The privilege of paying Five Hundred Dollars ($500.00) or any multiple thereof, on any day when interest matures, on account of the principal of this note, is hereby reserved.

(Signed)        George H. Collins,
Abbie E. Collins."

On the 24th day of November, 1916, this note was sold, transferred and delivered by The Mercantile Bank and Trust Company, to plaintiff, with this endorsement:

"Without recourse pay to Alexander Wiswall or order The Mercantile Bank and Trust Company, Boulder, Colo., by L. E. Chenault, cashier."

The bank at the same time also delivered to Wiswall the extension agreement.

Upon failure of defendants to pay, this suit was brought, in reliance upon the extension agreement, which resulted in a directed verdict in their favor. The court, in directing a verdict, instructed the jury upon the question of the extension agreement following the assignment of the note as security, as follows:

"Now, then, if these defendants can be held on this indebtedness at all, they must be held by virtue of a separate instrument which was entered into between The Mercantile Bank and Trust Company, acting through and by its cashier, L. E. Chenault, and J. P. Giroux and Louisa J. Gross, C. C. Gross and A. E. Collins.

"That the instrument entered into between the parties whose names I have just read was an obligation, obligatory upon those parties between themselves; that Giroux and Collins and others would pay the interest and principal of this note.  After this instrument was entered into the note for fifteen hundred ($1500.00) was assigned to the present plaintiff, who is now the holder and owner of the note and seeks to recover against Mr. Giroux and Mr. Collins, among other things by virtue of this agreement. While the note is assignable, that is, was passed from one person to another by assignment, this instrument does not follow it.  This instrument is not negotiable.  This instrument rests and remains and would fall obligatory upon the parties who signed it, but does not follow the assignment of the note, and these defendants in this case who were not makers of the note, did not sign the note, either as parties or sureties or guarantors.  That being the law, as I take it, gentlemen, there is only one thing for the Court to do in this case, and that is to direct a verdict in favor of defendants."

The court found the plaintiff to be the owner and holder of the note, which finding is abundantly supported by the evidence, and also found, by necessary implication, that the money which Wiswall had furnished to buy the note was not used to pay and discharge it, as contended by the defendants.  Indeed, there is not a syllable of evidence worthy of serious consideration which shows or tends to show payment of the note.

No cross-errors are assigned by the defendants, and this leaves as the sole question for determination whether the extension agreement passed as security with the assignment of the note.  It is urged that this question is not

properly before us, since, as is claimed, no mention was made of it in the motion for a new trial. This contention is without support in fact, as the third assignment of the motion reads:

"Because the court erred in directing the jury to return a verdict for defendants."

Under this assignment, which is general in its terms, any and all errors carried by the instruction referred to were brought to the attention of the court and are now properly here for argument and determination. Indeed, the vital point of the controversy is whether the extension agreement, a security in the hands of the bank, passed with the note when sold to plaintiff. In fact, that is the only question upon which the case was decided, and the controlling one upon which error is assigned.

In Daniels on Negotiable Instruments, page 859, paragraph 748, it is said:

"Equitable assignment. There is a peculiar kind of assignment which remains yet to be noticed. It is an assignment which arises not from the direct act of the person from whom the beneficial interest in the thing assigned passes; but is effected by operation of law, and is called equitable assignment. The assignment of any particular claim is considered an equitable assignment of all securities held by the assignor to assure it. Thus the assignment of a debt by whatever form of transfer, carries with it any bill or note by which it is secured; and the converse of the proposition is equally true, that the transfer by endorsement or assignment of a bill or note carries with it all securities for its payment, whether they exist by way of mortgage, deed of trust, or otherwise. A renewal note has the benefit of any security for the payment of the original, whether by way of mortgage, deed of trust, or otherwise, and the holder may enforce it, whether the renewal be for the whole or for part of the original in the absence of any agreement to the contrary."

In 8 C. J., at page 387, the rule is thus laid down:

"The transfer of a negotiable bill or note carries with

it all rights and powers provided for in the instrument itself or in collaterals accompanying it, and other rights growing out of and connected with the transfer of the paper, together with the right of recourse against all prior parties who are liable on the paper. So it includes all the remedies of the transferor, including the right to attack a fraudulent conveyance. So too a guaranty or contract of suretyship will pass with the transfer of the note."

And in Colebrooke on Collateral Security, at paragraph 144, it is said:

"The transfer of a negotiable promissory note, by indorsement and delivery, or by delivery merely, where indorsed in blank or payable to bearer, the payment of which is secured by mortgage or deed of trust, carries with it, in equity, the mortgage or deed of trust. The indorsee of the promissory note is entitled to the benefits of such mortgage, whether an assignment of the same is made or not unless there be some special provision to the contrary. The rule applies to a bond or other obligation given as collateral security for the payment of a promissory note. It is immaterial whether the existence of the mortgage security is known to the indorsee of the note at the time of the transfer so long as the same has not been separately extinguished."

The following cases are authority for the rule that the security follows the debt, and may be relied upon by the assignee, even though not specially assigned: *First National Bank v. Taylor,* 38 Utah 516, 114 Pac. 529; *Munson v. Exchange Bank,* 19 Wash. 125, 52 Pac. 1011; *Hopson v. Ætna Axle & Spring Co.,* 50 Conn. 597; *Claflin v. Ostrom,* 54 N. Y. 581; *Hecht v. Acme Coal Co.,* 19 Wyo. 18, 113 Pac. 788; 117 Pac. 132, 34 L. R. A. (N. S.) 773, 777, Ann. Cas. 1913E, 218; *Risk v. Hoffman,* 69 Ind. 137; *Stillman v. Northrup,* 109 N. Y. 475, 17 N. E. 379; *Tidioute Bank v. Libbey,* 101 Wis. 193, 77 N. W. 182, 70 Am. St. Rep. 907; *Everson v. Gere,* 122 N. Y. 290, 25 N. E. 492; *Smith v. Brunk,* 14 Colo. 75, 23 Pac. 325; *Credit Men's Co. v. Vickery,* 62 Colo. 214, 161 Pac. 297.

It is claimed that there was an oral assignment of the extension agreement in connection with its delivery. Whether there was such assignment is immaterial, as under the facts an assignment took place by operation of law, nothing further having been necessary to effect this result than the due endorsement and delivery of the note. The action is not strictly upon the note, but rather upon the extension agreement, which, as indicated above, passed with the sale of the note, and it was fatal error for the court to direct a verdict for the defendants. The extension agreement is in no sense special, particular or limited. On the contrary, it was a broad, general agreement, based upon a good and valid consideration, to unconditionally pay the note, principal and interest, at a specified time, no matter into whose hands it might fall. Collins and Giroux owned the land covered by the trust deed given to secure the payment of the note, and desired to sell it, but to do so needed an extension of time for the payment of the note. Under the agreement time for payment thereof was extended, and the sale and transfer of the land followed. No better or more valid consideration for such agreement could well be imagined.

The judgment is reversed and the cause remanded, with directions to enter judgment for plaintiff for fifteen hundred dollars, the face of the note, together with continuing interest thereon from November 24th, 1916, at the rate of seven per cent per annum, and for an additional one hundred and fifty dollars attorney's fees, according to the provisions of the note, being ten per cent of the face thereof.

Judgment reversed and cause remanded, with directions.

MR. CHIEF JUSTICE SCOTT not participating.