John F. SWOFFORD, Plaintiff-Appellee,

v.

The COLORADO NATIONAL BANK OF DENVER, Defendant-Appellant.

No. 80CA0789.

Colorado Court of Appeals, Div. II.

April 16, 1981.

Richard E. Falcone, Colorado Springs, for plaintiff-appellee.

Davis, Graham & Stubbs, A. Bruce Campbell, Steven J. Merker, Denver, for defendant-appellant.

VAN CISE, Judge.

John F. Swofford brought an action under C.R.C.P. 105, naming the Colorado National Bank of Denver (the bank) as a defendant, seeking a judgment that he is the owner of Lot 555 in the Woodmoor Greens Subdivision by virtue of a treasurer's deed issued to him because of the titled owners' failure to pay back taxes. The bank appeals from the granting of Swofford's motion for summary judgment. We reverse.

In 1972, William and Peggy Phillips purchased Lot 555 from the Woodmoor Corporation (Woodmoor). They executed and delivered a promissory note for $11,025 payable to the order of Woodmoor and gave a deed of trust to secure payment of the note. The deed of trust was duly recorded.

Woodmoor then pledged the Phillips' note, among others, to the bank as collateral security for a loan. Woodmoor endorsed the note to the bank and delivered it and the deed of trust to the bank on July 25, 1973. Neither the pledge agreement nor the endorsed note nor the assignment of the deed of trust was recorded.

In early 1974, Woodmoor became bankrupt. The bankruptcy court enjoined and stayed all of Woodmoor's creditors from taking any action to enforce any security interests in any property owned by Woodmoor. Thereafter, the bank applied to the bankruptcy court for relief from that stay and for permission to enforce its security interest in the Phillips' note, among others.

On March 25, 1976, that court entered an "Order of Abandonment of Property and Granting Relief from Stay" (abandonment order), which was duly recorded, along with an attached exhibit, with the clerk and recorder of El Paso County. That order provided, in pertinent part:

"The Colorado National Bank of Denver, its successors or assigns, may hereafter commence or continue any court action or public trustee's proceeding naming the bankrupt as a party for the sole purpose of enforcing its security interest in the real property subject to the deeds of trust listed in Exhibit A hereto or the adjudication of title to the real property listed on Exhibit A attached hereto . . . ."

Exhibit A was entitled:

"Real Properties Securing Promissory Notes Under Deeds of Trust to Public Trustee Pledged by the Woodmoor Corporation to the Colorado National Bank of Denver."

The Phillips were listed in Exhibit A as the makers of a promissory note in the original amount of $11,025 and as grantors of a deed of trust to Lot 555, and a legal description of the property was included.

Meanwhile, on November 3, 1975, Lot 555 was sold for 1974 delinquent taxes to Swofford for $165. Three years later, *see* § 39–11–120, C.R.S.1973, Swofford requested the El Paso County treasurer to issue him a treasurer's deed for the lot. Pursuant to § 39–11–128, C.R.S.1973, the Treasurer served notice on a number of persons that Swofford had requested a treasurer's deed, but the bank was not served with any such notice. Accordingly, the bank did not exercise its right to redeem Lot 555, and, on May 25, 1979, Swofford was issued a treasurer's deed, which was duly recorded.

Before the treasurer is authorized to issue a treasurer's deed:

"The treasurer shall serve or cause to be served, by personal service or by either registered or certified mail, a notice of such purchase . . . upon all persons having an interest or title of record in or to [the land] . . . ." Section 39–11–128(1)(a), C.R.S.1973.

*Citing Siler v. Investment Securities Co.*, 125 Colo. 438, 244 P.2d 877 (1952), the bank asserts that it was a person having an interest of record and was required to be served with notice and, in the absence of such service, the treasurer's deed was invalid. We agree.

█ The purpose of § 39–11–128, C.R.S. 1973, is to forbid the issuance of a treasurer's deed unless notice is given to persons with an interest in the property, "particularly to one having the right of redemption." *Bogue v. Miles*, 107 Colo. 320, 111 P.2d 1055 (1941). Among those having the right to redeem is any person having a legal or equitable claim in the real property. *See* § 39–12–103(1), C.R.S.1973; *Boyle v. Culp*, 159 Colo. 423, 412 P.2d 543 (1966).

█ By virtue of the pledge agreement and Woodmoor's endorsement and delivery of the Phillips' note and the deed of trust, the bank's initial interest was a perfected security interest in the instruments, such

being personal property. *See Moffat V. Williams*, 5 Colo.App. 184, 36 P. 914 (1894); § 4–9–102, C.R.S.1973 (Official Comment 4); § 4–9–305, C.R.S.1973. However, when Woodmoor defaulted on its debt to the bank, on or before the filing in bankruptcy, the bank's interest ripened into an interest in real property by virtue of its election to retain the collateral and its compliance with § 4–9–505(2), C.R.S.1973, following the bankruptcy court's entry of the abandonment order. The bank then became an assignee of the Phillips' note, which note carried with it the security interest in Lot 555 created by the deed of trust. *See Wiswall v. Giroux*, 70 Colo. 121, 197 P. 759 (1921). Therefore, the bank, having a legal or equitable claim in the real property, had a right to redeem and had an interest in the property.

Swofford contends that the bank did not have "an interest of record" and that the bank was therefore not entitled to be served with notice. He asserts, and the district court agreed: (1) that the abandonment order itself reflects, at best, that the bank had a possible interest in Lot 555, and (2) that under § 38–35–108, C.R.S.1973, recording of the abandonment order itself was insufficient to constitute notice of any interest of the bank where instruments referred to in the order, the promissory note and the pledge agreement, were not themselves recorded. We disagree.

█ In light of the purpose of § 39–11–128, C.R.S.1973, see *Bogue v. Miles, supra*, and the necessity of full compliance with that section as a prerequisite to validity of a treasurer's deed, see *Siler v. Investment Securities Co., supra*, we hold that the above quoted language from the recorded abandonment order was sufficient to indicate to a person examining that order that the bank had *an* interest in Lot 555. Although at the time the order was recorded full ripening of the bank's interest may have been contingent on compliance with the Uniform Commercial Code, the bank did have an interest in real property as of that time, and it was "of record." *See Godfrit v. Judd*, 116 Colo. 489, 182 P.2d 907 (1947).

Nor was it necessary to record the endorsed promissory note or the pledge agreement to put the treasurer on notice of the bank's interest. Although recording of the note or the agreement would have enabled one searching the records to ascertain the bank's specific interest, the language of the recorded abandonment order itself was sufficient, and no further inquiry was needed, to establish that the bank had an interest in Lot 555. *Cf.* § 38–35–108, C.R.S.1973.

Because a "diligent inquiry" of the records of the clerk and recorder of El Paso County by the treasurer or by Swofford would have disclosed that the bank had an interest of record in Lot 555, *see Siler v. Investment Securities Co., supra,* we hold that the bank was entitled to be served with notice by the treasurer under § 39–11–128, C.R.S.1973. The bank not having received notice, the treasurer's deed issued to Swofford was invalid. *See Siler, supra.*

The judgment is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

PIERCE and KELLY, JJ., concur.