**NOTCH MOUNTAIN CORPORATION,**
**Petitioner,**

v.

**Jack ELLIOTT, Respondent.**

**No. 94SC325.**

Supreme Court of Colorado,
En Banc.

June 26, 1995.

Rehearing Denied July 24, 1995.

---

Parcel, Mauro, Hultin & Spaanstra, P.C., David A. Bailey, Michael M. Page and Kimberly A. Tempel, Denver, for petitioner.

John W. Savage, P.C., John W. Savage, Rifle, for respondent.

Chief Justice ROVIRA delivered the Opinion of the Court.

We granted certiorari in *Elliott v. Notch Mountain Corp.*, 881 P.2d 434 (Colo. App.1994), to decide whether the court of appeals erred in holding that a severed mineral estate and a reservation in a surface estate constitutes an "equitable interest" sufficient to exercise a right of redemption pursuant to section 39–12–103(1), 16B C.R.S. (1994).

We hold that the right of a severed mineral interest owner to use a reasonable amount of the surface estate for mineral development does not constitute an interest sufficient for such owner to exercise statutory redemption rights in a severed surface estate. Accordingly, we reverse and return this case to the court of appeals with directions to remand the case to the district court for further proceedings consistent with this opinion.

## I

### Facts

The parties have agreed to the following facts. Jack Elliott's (Elliott) interest in the property derives from a 1917 deed in which Elliott's predecessor, The Ground Hog Tunnel and Mining Company (Ground Hog) conveyed to The Empire Zinc Company (Empire) all of Ground Hog's interest in the surface and shallow mineral rights underlying the tax sale property, reserving to Ground Hog all of the deep rights, together with the right to use that portion of the surface estate reasonably necessary to develop its reserved mineral interest. The deed created two estates in the land, one covering the surface and the minerals down to, but not including, the quartzite formation, and one covering the quartzite formation and all deeper formations. Elliott is successor to Ground Hog's retained interest in the deeper horizons.[1]

In 1985 the Eagle County Treasurer sold a Tax Lien Sale Certificate of Purchase to Margaret Zwaan to secure payment for delinquent taxes levied against lands located in the Battle Mountain Mining District in Eagle County, Colorado, under which Elliott owns a severed mineral interest.[2] In 1992 Zwaan assigned her interest in the tax certificate to Notch Mountain Corporation (Notch Mountain).

After the tax certificate issued, Elliott attempted to redeem the property. Though the Eagle County Treasurer initially accept-

---

1. Elliott acquired his interest by deed from the remaining officers and shareholders of The Ground Hog Mining Company in 1937 after the company had ceased operations. Though Notch Mountain refers to Elliott's interest as a "claimed interest", no question regarding the validity of Elliott's ownership of the deep rights is now before this court.

2. The Certificate of Purchase No. 1985–1088 included eleven separate mining claims located in section 13, Township 6 North, Range 81 West, 6th P.M., Eagle County, Colorado. The interest was limited to the surface estate and unsevered minerals. Elliott claims an interest in the severed minerals underlying seven of the eleven described claims (tax sale property).

ed Elliott's payment for delinquent taxes, she later determined that Elliott did not own a sufficient interest in the property to redeem. After Notch Mountain requested the Eagle County Treasurer to issue a deed, Elliott sued the Treasurer seeking to enjoin its issuance. The trial court granted Notch Mountain leave to intervene.

From the outset of this case Elliott has conceded that his mineral interest will not be altered if he is denied the right to redeem. As he explained in his brief, "Elliott does not contend that the Treasurer's Deed issued on TLS # 1985–1088 will convey any of the property interests he now owns."

Because there was no dispute as to the facts, the trial court entered an order on cross-motions for summary judgment, finding that Elliott's surface rights, reserved under the 1917 deed, created in Elliott a claim to the surface estate.[3] The court then ordered the Eagle County Treasurer to accept Elliott's funds tendered in redemption.

In *Elliott v. Notch Mountain Corp.*, 881 P.2d 434 (Colo.App.1994), the court of appeals affirmed. The court did not decide whether Elliott's interest in the tax sale property was legal or equitable, but rather stated that the "tax sale of the surface interest contemplated the transfer of an estate in which Elliott has a statutorily cognizable right." *Notch Mountain*, 881 P.2d at 436. The court explained that Elliott "possess[ed] rights in the surface estate granted by deed and allowed by law, and can enforce those rights by proper action." *Id.* In so concluding the court implied that Elliott had two claims sufficient to support redemption; one based upon the legally recognized right of severed mineral interest owners to use the surface, and the other based upon the surface rights retained in the 1917 deed.

## II

### Statutory Framework

We first consider the intersection between the law of redemption and the law applicable to severed mineral interests. We begin by setting forth the statutes related to redemption including the redemption procedures contained in article 12 of title 39, 16B C.R.S. (1994). We also consider the statutes which Elliott contends support his right to redeem, including section 39–11–150, 16B C.R.S. (1994) which provides for the sale of tax liens on severed mineral interests, and section 38–41–110, 16A C.R.S. (1982), which provides for payment of delinquent taxes by an owner of less than the whole property. We then examine Elliott's interest recognized at law and created by deed. Finally, we consider whether Elliott's interest should be recognized as a legal or equitable claim in the property sufficient to redeem.

### A. Redemption

Article X, section three of the Colorado Constitution provides for the taxation of all nonexempt real and personal property in accordance with the general laws of the state. Colo. Const. art. X, § 3. If taxes are not paid, the General Assembly has authorized procedures by which the property can be sold to collect delinquent taxes, interest and costs. *See* §§ 39–11–101 to –152, 16B C.R.S. (1994). In connection with the taxation scheme the General Assembly established a redemption procedure by which statutorily designated persons can recover their interest in property sold for delinquent taxes. §§ 39–12–101 to –113, 16B C.R.S. (1994). As pertinent here section 39–12–103(1) provides:

> Real property for which a tax lien is sold under the provisions of Article 11 of this title as a result of delinquent taxes may be redeemed by the owner thereof or his agent, assignee, or attorney or by any person having a legal or equitable claim therein, or by a holder of a tax sale certificate. . . .

§ 39–12–103(1), 16B C.R.S. (1994).

█ Upon payment of the delinquent taxes, interest and costs by a party entitled to

---

**3.** The trial court concluded:

Elliott has the legal right to construct and maintain buildings and mine workings on the land conveyed in the tax sale. He also has the right to 'surface ground as reasonably needed' for buildings, workings and operations. By virtue of these legal rights, Elliott has a claim to the land conveyed in the tax sale. Consequently, Elliott has a right to redeem.

redeem, the treasurer will issue a certificate of redemption, which, when presented to the county clerk and recorder, is entered on the county records. § 39–12–105 to –106. Redemption, therefore, does not transfer title to the redemptioner, but rather prevents a transfer of title by tax deed.[4] No right to augment ownership is recognized as part of the redemption process.

### B. Payment of Delinquent Taxes by Partial Interest Owner

The General Assembly has authorized payment of delinquent taxes on the entire estate by certain co-owners as follows:

> [t]he owner of not less than one-tenth undivided interest in real property which he has owned not less than one year may pay and the county treasurer shall receive from him all delinquent taxes due upon the entire or any other fractional interest therein by redemption from prior or subsequent tax sales or by payment of any taxes which are delinquent. . . .

§ 38–41–110, 16A C.R.S. (1982). Such payment allows the co-owner to be subrogated to the first and prior lien of the state of Colorado for such taxes.[5] *Id.* The lien may be foreclosed at any time after four years from the date when the taxes are paid in the same manner as a first mortgage. *Id.* This right is not part of the redemption statutes, but instead is included in the real property statutes. Though similar to the right to redeem, a paying co-owner does not receive a redemption certificate or acquire an interest in the co-owner's estate. Rather, the paying co-owner is granted the right to foreclose the lien for unpaid taxes.

### C. Sales of Tax Liens on Severed Mineral Interests

The final statute requiring consideration is section 39–11–150, 16B C.R.S. (1994), which grants to surface owners the right of first refusal to purchase the tax lien on severed mineral interests coterminous with the surface estate. Again, this statute is not part of the redemption scheme, but rather is contained in article 11 of title 39 providing for the sale of tax liens. Because the interest granted is a right of first refusal to purchase the tax lien, severed mineral interest owners retain the right to redeem their interest. *See generally* Willis V. Carpenter, *Severed Minerals as a Deterrent to Land Development,* 51 Denv.L.J. 1, 34–35 (1974) (explaining this section makes it possible in Colorado to acquire a long forgotten mineral interest created by an ancient deed and never assessed for taxes). When the General Assembly created this right it did not recognize a reciprocal right of first refusal in severed mineral interest owners to obtain a tax lien on the surface.

### III

### Redemption

As a preliminary matter we recognize that Notch Mountain has no interest in the property other than its interest in the tax certificate. Therefore, Notch Mountain is entitled only to protection of that investment. *See, e.g., Bean v. Westwood,* 101 Colo. 288, 73 P.2d 386 (1937). Such recognition does not create a redemption interest in Elliott. The question is not whether Elliott has a greater connection to the land than does Notch Mountain, but rather, whether his interest is sufficient to recognize a statutory redemption right.

Though the right to redeem has a long statutory history, the General Assembly has never defined "legal or equitable claim."[6]

---

4. On the other hand, issue of a tax deed under the tax sale statutes vests in the deed recipient all "right, title, interest and estate of the former owner," extinguishing all previous encumbrances. *See* § 39–11–136, 16B C.R.S. (1994).

5. A co-owner's right to pay taxes is distinguishable from the right of ratable redemption by any party owning less than a full interest in the estate by payment of a proportionate share of delinquent taxes. §§ 39–12–103(2) & 39–12–113, 16B C.R.S. (1994). When a partial interest is re-

deemed the treasurer then issues a corresponding partial redemption certificate. § 39–12–113(1). Under these provisions, redemption is limited to the ownership interest of the partial interest owner.

6. The right to redeem lands sold for taxes first appears in the Territorial Laws of 1871 where redemption rights were recognized in the property "owner, his agent, assignee or attorney." In 1902, the revenue act was repealed and reenacted. *See* Ch. 3, sec 186, 1902 Colo.Sess.Laws

We have considered different interests that constitute a legal or equitable claim sufficient for redemption on several occasions but have not before considered whether severed mineral interest owners have the right to redeem the surface estate.

 Several principles of statutory construction related to redemption guide our analysis. First, the right of redemption is statutory and can be exercised only according to statutory prescriptions. *E.g., Boyle v. Culp,* 159 Colo. 423, 412 P.2d 543 (1966). One who has no interest in the land has no right to redeem. *See Johnson v. Dunkel,* 132 Colo. 383, 288 P.2d 343 (1955). However, because redemption is favored over forfeiture redemption statutes are liberally construed in favor of the redemptioner. *See, e.g., Bean v. Westwood,* 101 Colo. 288, 291, 73 P.2d 386, 386 (1937). Thus, this case requires us to consider the relationship between statutory redemption rights and the policy of affording property owners ample opportunity to redeem.

Typically, the party asserting the right to redeem has a present or contingent ownership interest in the property that would be affected by the tax sale. *See Johnson,* 132 Colo. at 387, 288 P.2d at 345; *see generally* 85 C.J.S. *Persons Entitled to Redeem* § 844 (1954 & Supp.1994) ("Ordinarily, any person interested in land sold for taxes is entitled to redeem if his interest in the property will be affected by the maturing of the tax title in the purchaser."). The redemptioner's interest may not be a record title interest, but instead may be an equitable claim to the property sold for taxes. For instance, in *Bean v. Westwood,* 101 Colo. 288, 73 P.2d 386 (1937), we allowed redemption by a party who acquired a lease and option to purchase property from a New York corporation that, at the time of the transfer, appeared of record as the property owner. Though the deed was duly executed by the corporate vice-president and secretary, further investigation

revealed that the corporation was not authorized to do business in Colorado. In addition, its corporate existence was no longer recognized in the State of New York. Despite these title defects, we concluded that the redemptioner was in "possession under a claim of right and therefore had an equitable title or at least an 'equitable claim' therein." *Bean,* 101 Colo. at 291, 73 P.2d at 387. Similarly, in *Boyle v. Culp,* 159 Colo. 423, 412 P.2d 543 (1966), we allowed redemption on behalf of an inoperative corporation by the wife of a deceased corporate shareholder even though the corporate shares were inadvertently omitted from the listing of the estate assets transferred to her from her deceased husband. In *Boyle,* we again noted that despite the title defect, corporate shareholders have an ownership interest in corporate property and a corresponding right to redeem. *Id.* at 429–30, 412 P.2d at 545–46; *see also Swofford v. Colorado Nat'l Bank,* 628 P.2d 184 (Colo.App.1981) (recognizing the right to redeem in a noteholder where the note included a security interest in the property).[7] In each of these cases the redeeming parties' rights would have been extinguished if a tax deed issued.

In contrast, we have concluded that no right to redeem exists absent an interest in the property. *See Johnson v. Dunkel,* 132 Colo. 383, 288 P.2d 343 (1955). In *Johnson,* an adjoining landowner attempted to redeem the taxes levied against property in which he claimed an ownership interest based on the mistaken belief he owned the improvements thereon. There, we explained that the redemptioner "was not in privity of title with the record title owner prior to the issuance of the tax deed; that he had acquired no rights by adverse possession; and that he had no lien upon the land or other interest of any kind which he could enforce against the owner of the fee in said property." *Id.* at 387, 288 P.2d at 346; *see also Saunders v. Bank-*

---

43, 140, approved March 22, 1902. At that time the right of redemption was extended to parties who have a "legal or equitable claim" in the property. Though the statute has been revised over the years, this language has remained unchanged since 1902.

7. The right to redeem has been recognized in not only an owner, but in his or her heirs or successors, assignees, an adverse possessor, or a party holding a lien in the property such as a mortgagee or judgment creditor. *See generally,* Richard R. Powell & Patrick J. Rohan, 3 *Powell on Real Property* § 496[5], at 39–73–74 (1994).

*ston,* 31 Colo.App. 551, 555, 506 P.2d 1253, 1256 (1972) ("One having no interest in the property cannot redeem.").

While Elliott has the right to enter onto the surface estate, he will not lose his mineral interest or his corresponding surface rights if not allowed to redeem. He contends, however, that he should be allowed to redeem because his interest is "inextricably intertwined" with the tax sale property. He compares his interest to the rights recognized in a co-owner of an undivided interest in less than the full estate. He further maintains that compelling policies support recognition of his right to redeem, arguing development of the surface estate will severely impact the utility and value of his reserved mineral interest. We first examine Elliott's interest in the property, and then address his arguments.

## IV

### Elliott's Interest

No doubt exists that Elliott has a right to use the surface estate. This right is not dependent on ownership of the surface estate, but rather derives from two separate sources: first, his severed mineral ownership and the rights pertaining thereto, and second, the 1917 deed and Elliott's retained interest.

### A. Severed Mineral Ownership

■ We have long recognized that a conveyance which severs a mineral interest from the surface estate creates a separate and distinct estate. *See, e.g., Radke v. Union Pac. R. Co.,* 138 Colo. 189, 334 P.2d 1077 (1959); *Mitchell v. Espinosa,* 125 Colo. 267, 243 P.2d 412 (1952). Owners of a severed interest, whether minerals or surface, are therefore free to separately convey their interests. *See Clevenger v. Continental Oil Co.,* 149 Colo. 417, 369 P.2d 550 (1962); *Osborne v. Holford,* 575 P.2d 866, 40 Colo.App. 365, 367 (1978). Because the estates are distinct, severed mineral interests are taxed separately from the surface, in the same manner as real property. §§ 39–1–104, 104.5, 106, & 39–11–150, 16B C.R.S. (1982 & 1994 Supp.). Consequently, title to a severed mineral interest is not conveyed under a tax deed issued for delinquent taxes levied against the surface estate. *E.g., Mitchell,* 125 Colo. at 274, 243 P.2d at 417.

### B. Rule of Reasonable Surface Use

■ Though the estates are distinct, severed minerals cannot be developed absent access to the surface estate. We have therefore also recognized that a severed mineral owner has the right to use that portion of the surface estate that is reasonably necessary to develop the severed mineral interest. *Rocky Mountain Fuel Co. v. Heflin,* 148 Colo. 415, 421, 366 P.2d 577, 580 (1961); *cf. Frankfort Oil Co. v. Abrams,* 159 Colo. 535, 413 P.2d 190 (1966). The right to use the surface, commonly referred to as the rule of reasonable surface use, merely acknowledges that absent a right to access, the mineral interest would lie dormant. *See Chartiers Block Coal Co. v. Mellon,* 152 Pa. 286, 25 A. 597, 599 (1893) ("To place [minerals] beyond the reach of the public would be a great public wrong.").

■ Though the privilege to use the surface is recognized at law, this right does not create an ownership interest in the surface estate, or the right to destroy the surface, but merely a right of access. *E.g., Smith v. Moore,* 172 Colo. 440, 474 P.2d 794 (1970); *see generally* 6 *American Law of Mining* § 200.02 (Rocky Mountain Min.L.Found. ed. 1994).

### C. 1917 Deed

■ Elliott claims that the reservation contained in the 1917 deed created surface rights in addition to those recognized by law, and that these rights constitute a "legal or equitable claim" sufficient for redemption purposes.[8] Close examination of the 1917 deed does not support his contention.

---

**8.** Elliott has not urged adoption of a rule that would allow all severed mineral interest owners the right to redeem, explaining "[i]t is not necessary in this case to find that all severed mineral interests are entitled to redeem, only those in this particular case, due to the intent of the parties as expressed in the wording of the conveyance and reservation document."

 Our paramount purpose in construing any deed is to ascertain the parties' intent. *Percifield v. Rosa,* 122 Colo. 167, 220 P.2d 546 (1950). Absent any ambiguity, the intent should be determined from the four corners of the instrument. *E.g., O'Brien v. Village Land Co.,* 794 P.2d 246 (Colo.1990). Courts must take care to consider the entire deed, and not portions presented in isolated sentences and clauses. *Corlett v. Cox,* 138 Colo. 325, 333 P.2d 619 (1958). Reservations are construed more strictly than a grant, *see Radke v. Union Pac. R. Co.,* 138 Colo. 189, 334 P.2d 1077 (1959), and any ambiguities in a reservation are construed against the grantor. *Bell Petroleum Co. v. Cross V. Cattle Co.,* 492 P.2d 80 (Colo.App.1971). With these principles in mind, we turn to the language of the 1917 deed.

The granting clause stated the following interests were conveyed:

The surface of the ground, the porphyry formation, the lime formation and any and all formations lying above the quartzite formation in place, of and in the following described mining claims and property....

The deed describes the specific mining claims covered, and states the grantor's intent to convey:

[A]ll the rights, privileges and franchises thereto incident, appendant and appurtenant, or therewith usually had and enjoyed; and all and singular and tenements, hereditaments and appurtenances thereto belong, or anywise appertaining, and the rents, issues and profits thereof; *and all the estate, right, title interest, claim and demand whatsoever, as well in law as in equity, of the said party of the first part [grantor], of, in or to the said mines and property, and every part and parcel thereof....*

(emphasis supplied.)

Thus, the grant constituted a clear and unambiguous conveyance of the entire surface, and the corresponding mineral interest from the surface down to the quartzite formation. No evidence exists that the grantor intended to create a co-tenancy in the property. *See In re Sullivan's Estate,* 121 Colo. 494, 500, 218 P.2d 1064, 1067 (1950) (because ownership in common or co-tenancy contradicts the general rule that conveyances are presumed to effect a fee-simple exchange, creation of a co-tenancy requires express deed language).

The deed reserves to the grantor (Ground Hog):

the right to construct and maintain such buildings and such mine workings as it may desire on and from the surface of the ground to and into the quartzite formation in place, and to extend mine workings as it may desire for operations in and below the said quartzite formation in place and all formations thereunder, with such surface grounds as may be reasonably needed for such buildings, workings and operations, PROVIDED ALWAYS that such use and enjoyment shall not unreasonably interfere with operations of the said party of the second part [surface owner], its successors or assigns, it being the intention of the parties hereto that each shall have and enjoy the use of the surface always without unreasonable interference with the uses of the [surface owner]....

The language of the deed does not reveal any intent to create a surface interest greater than that which is normally recognized at law. First, the reservation is limited to that portion of the surface that is "reasonably needed" to develop the severed mineral interest, consistent with the rule of reasonable use. The deed contemplated the joint development of the property by both parties as evidenced by the provision that Ground Hog's operations will not unreasonably interfere with the operations of the surface owner. Thus, the reservation embodies the rights recognized under the rule of reasonable surface use. It does not include any language suggesting a co-tenancy. The surface rights are consistently referred to as rights of "use," and not rights of ownership. Based on our review of the deed as a whole we conclude that the reservation did not act to create any greater interest in the surface estate than that which we recognize as a matter of law.

Our conclusion that the deed contained express language recognizing the rule of reasonable use is not decisive of whether a

severed mineral interest, standing alone, constitutes a legal or equitable interest sufficient to redeem. Though Elliott does not argue a decision in his favor would require recognition of redemption rights in all severed mineral owners, the court of appeals' decision on this point is ambiguous. Further, Elliott's remaining arguments, and the court of appeals' analysis relate to interests that are common to severed minerals in general, and are therefore considered in that context.

## V

### Redemption Rights and Severed Mineral Interests

Examination of the statutory provisions set forth in Section II above support the conclusion that the General Assembly did not intend to extend redemption rights to severed mineral interest owners.

Despite Elliott's attempt to characterize himself as a co-tenant, neither the interest retained in the 1917 deed, nor the right to use the surface recognized at law results in joint ownership of the surface. Though certain co-owners are allowed to pay taxes on the entire estate under the real property statutes, this right was not granted to severed mineral interest owners. Indeed, the statutory privilege granted to co-owners to pay taxes does not extend to all co-owners, but only to those parties who own a substantial interest in the lands. Parties who own less than ten percent of the property have no right to pay taxes on the balance of the lands. Further, co-ownership does not create a right to redeem the lands on behalf of a delinquent co-owner, but rather allows the paying party to secure a lien that may be later foreclosed according to statute.

■ The court of appeals suggests that the first right of refusal to pay taxes on the mineral estate granted to surface owners under section 39–11–150 created a corresponding right in mineral owners. *Notch Mountain*, 881 P.2d at 436. We do not agree. When the General Assembly enacted this legislation in 1973 it could have extended

a reciprocal right of first refusal to severed mineral owners, but chose not to do so. *See, e.g., Truck Ins. Exchange v. Home Ins. Co.*, 841 P.2d 354 (Colo.App.1992) (when a statute specifies a certain situation to which it applies generally it must be construed to exclude from its operation situations not specified), *cert. denied*, No. 92SC497 (Colo. Dec. 1, 1992). Thus, the plain language of the statute does not support the court of appeals' conclusion.

Though the court of appeals is correct in pointing out that mineral owners may enforce the right to use the surface by appropriate action, *Notch Mountain*, 881 P.2d at 436, issue of the tax deed will not affect Elliott's ability to exercise these rights. Thus, the right to bring an equitable action cannot be considered synonymous with an equitable claim in the property.

Elliott argues that tax sale statutes are directed primarily at obtaining reimbursement of delinquent taxes, and that the state has little interest in who redeems provided the delinquent taxes are paid. Elliott confuses the policies underlying tax sale and redemption. Though tax collection lies at the heart of any tax sale, redemption focuses on the rights of parties who have a claim in the lands, and their ability to avoid forfeiture. *See, e.g., Buck v. Canty*, 162 Cal. 226, 121 P. 924, 925 (1912) ("Property owners owe the duty to the state to pay the taxes which it has levied upon their property ... [and] the policy of this state is to afford an opportunity to the delinquent owner to redeem the property at any time before an actual sale by the state has been made."). Redemption is a vehicle to reacquire an interest subject to loss, not merely a tax collection procedure. Examination of the cases relied upon by Elliott illustrates this policy, and supports our conclusion that he has no right to redeem. On the two occasions where a court has recognized redemption rights in a mineral interest owner, issuance of a tax deed would have resulted in forfeiture of the mineral interest. *See Steele v. Freel*, 157 Fla. 223, 25 So.2d 501 (1946); *Payne v. A.M. Fruh Co.*, 98 N.W.2d 27 (N.D.1959).[9]

---

9. The holdings in both of these cases were unrelated to the mineral interest owners' rights. In

*Steele* the court considered the constitutionality of the redemption statutes. In *Payne,* the court

In *Steele*, there was a significant delay between the issuance of tax sale certificate in 1927, and the application for a tax deed in 1945. In the interim period a one-half interest in the minerals was acquired by the party seeking to redeem. Because the original tax sale certificates covered all minerals, the acquired mineral interest would have been extinguished when the deed issued. There, the court pointed out that the mineral interest owners' claim that they held an interest in the lands was "admitted as true on the record." *Id.* at 503.[10]

■ In *Payne*, the right to redeem was extended to a perpetual nonparticipating royalty interest owner. There, the mineral interest was created at a time when the whole interest in the land was subject to the county's lien for taxes, and thus, no severance occurred. *Payne*, 98 N.W.2d at 32. Because the royalty interest would have been extinguished upon issue of the tax deed the court concluded that the royalty interest owner was entitled to notice of the sale, and could exercise redemption rights.[11] These cases are consistent with principle that a party who has a claim of ownership subject to loss upon issue of a tax sale deed has the right to redeem.

Finally, Elliott argues that the surface and minerals should be consolidated so that surface development will not impair his rights to develop his mineral interest. We note that this argument ignores his legally recognized right of access to the surface for mineral development. Though we acknowledge the policy considerations implicit in the recombination of the surface and mineral estate, we cannot agree with him unless we discount the value of potential surface development. Harmonious development of both the surface and the mineral estate results in maximum land use efficiency.

## VI

In summary, we hold that the rights of a severed mineral interest owner recognized at law do not create an interest in the surface estate sufficient for redemption purposes. We further find that the surface use reservation contained in the 1917 deed did not create a legal or equitable claim in the surface estate sufficient for redemption purposes. The judgment of the court of appeals is reversed and this case is returned to the court of appeals with directions to remand to the district court for further proceedings consistent with this opinion.

---

was called on to consider the sufficiency of a claim based on adverse possession.

**10.** The *Steele* court took care to point out that it was not deciding the right of the severed mineral interest owner to assert its interest against the surface owner. *Steele,* 25 So.2d at 503.

**11.** Unlike North Dakota, we have declined to recognize perpetual nonparticipating royalty interests as a distinct legal estate apart from the fee title. *See, e.g.,; Corlett v. Cox,* 138 Colo. 325, 333 P.2d 619 (1959); *Simson v. Langholf,* 133 Colo. 208, 293 P.2d 302 (1956). Thus, our analysis of *Payne* is limited to the insight it provides on the policy underlying redemption.