**WINTER PARK DEVIL'S THUMB INVESTMENT COMPANY and Jack W. Randall, Petitioners,**

v.

**BMS PARTNERSHIP, a Colorado Partnership, Respondent.**

No. 95SC573.

Supreme Court of Colorado, En Banc.

Nov. 18, 1996.

Rehearing Denied Dec. 9, 1996.

Frascona, Joiner and Goodman, P.C., Jonathan A. Goodman, Louise Culberson–Smith, Boulder, for Petitioners.

Anthony J. DiCola, Hot Sulphur Springs, for Respondent.

Chief Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to review the court of appeals decision in *BMS Partnership v. Winter Park Devil's Thumb Investment Co.*, 910 P.2d 61 (Colo.App.1995), to determine whether limited partners are entitled to notice prior to the issuance of a treasurer's deed. The court of appeals held that the actual notice provided to the general partner of a partnership was sufficient to put the limited partners on imputed notice of the treasurer's deed application. We hold that Winter Park's limited partners were not entitled to separate notice under section 39–11–128(1)(a), 16B C.R.S. (1994). We therefore affirm the court of appeals on different grounds.[1]

## I.

Winter Park Devil's Thumb Investment Company (Winter Park), a limited partnership duly organized under the laws of Colorado in 1973,[2] was the fee simple owner of real property located in Grand County, Colorado.[3] On November 21, 1988, BMS Partnership (BMS) paid $589.25 to purchase a tax lien on the property at a sale conducted by the Grand County Treasurer (the treasurer).

In December of 1991, BMS applied for a treasurer's deed,[4] whereupon the treasurer sent notice to Winter Park's general partner, Jack Randall (Randall), pursuant to section 39–11–128(1)(a). In addition to the personal notice sent to Randall, the treasurer also published general notice and posted notice on the property. On prior occasions, the treasurer had notified Winter Park's thirteen limited partners (the limited partners). However, the current treasurer decided to discontinue this practice because she believed notification of the limited partners was unnecessary. Winter Park did not redeem the property within the statutory period.[5] Accordingly, the treasurer deeded the property to BMS on June 11, 1992.

On April 8, 1993, one of the limited partners tendered the full redemption amount to the treasurer,[6] claiming that the limited partners had been entitled to separate notice of the treasurer's deed application. The treasurer refused to issue a certificate for redemption because the redemption period had expired and the deed had been issued.

BMS filed a complaint to quiet title in the property. The trial court found that the limited partners held no interest that required providing them with separate notice prior to the issuance of the treasurer's deed. The court of appeals affirmed, finding that, even if the limited partners held a sufficient interest to compel notice under section 39–11–128(1)(a), the notice provided to Winter Park's general partner could be imputed to the limited partners.

1. We disagree with the court of appeals' application of imputed notice in this case because it implies that limited partners have an interest in the property that entitles them to notice under § 39–11–128(1)(a). We hold today that limited partners are not entitled to separate notice under § 39–11–128(1)(a).

2. Winter Park's certificate for limited partnership was executed on January 5, 1973.

3. The lot description is as follows: Lot 3, Block MH, Ptarmigan.

4. A person holding a tax lien on real property must wait three years before filing a treasurer's deed application. § 39–11–120(1), 16B C.R.S. (1994).

5. Section 39–11–128(1)(a) provides that parties having a right to redeem must be notified "not more than five months nor less than three months before the time of issuance of [the treasurer's] deed." Section 39–12–103(3), 16B C.R.S. (1994), provides that one having the right to redeem may do so up until the issuance of the treasurer's deed.

6. Randall delivered a check for $2,900 to redeem the property on behalf of Jacquelyn Mager and the other limited partners. In an affidavit submitted to the trial court, the treasurer, Margaret J. Alt, claims that Mager did not appear at the office on April 8, 1993, and that she was not made aware that Randall was acting on Mager's behalf.

## II.

The question to be determined is whether the treasurer was obligated to provide notice of the treasurer's deed application to Winter Park's limited partners. Section 39–11–128, 16B C.R.S. (1994), provides in pertinent part:

(1) Before any purchaser ... of a tax lien on any land ... sold for taxes ... is entitled to a deed for the land ..., he shall make request upon the treasurer, who shall then comply with the following:

(a) The treasurer shall serve ... a notice of such purchase on every person in actual possession or occupancy of such land, lot, or claim, and also on the person in whose name the same was taxed ... *and upon all persons having an interest or title of record in or to the same ....*

(Emphasis added.)

The limited partners assert that they possess a right to redeem real property owned by the partnership and that the right to redeem constitutes a sufficient interest to trigger the notice requirements of section 39–11–128(1)(a). Because they were not notified of the treasurer's deed application, the limited partners maintain that the BMS deed is invalid.

In addressing the limited partners' argument, we must first set forth the purposes of section 39–11–128(1)(a) and the right of redemption. We must then define the extent of a limited partner's interest within the partnership to determine if this interest entitled the limited partners to separate notice under the statute.

### A.

■ Before a treasurer's deed is issued, section 39–11–128(1)(a) compels the treasurer to provide notice to all persons having an interest in real property, and "particularly to one having the right of redemption." *Bogue v. Miles,* 107 Colo. 320, 322, 111 P.2d 1055, 1057 (1941). Upon the payment of delinquent taxes, interest, and costs by a redeeming party, the treasurer must issue a certificate of redemption that prevents the transfer of title by tax deed. *See* §§ 39–12–105 to –109, 16B C.R.S. (1994 & 1996 Supp.); *Notch Mountain Corp. v. Elliott,* 898 P.2d 550, 553–54 (Colo.1995).

■ Those holding "a legal or equitable claim" in the property have the right to redeem prior to a tax sale. § 39–12–103(1), 16B C.R.S. (1994). In construing the right to redeem, we have explained that "the right of redemption is statutory and can be exercised only according to statutory prescriptions." *See, e.g., Notch Mountain,* 898 P.2d at 555. Additionally, "[o]ne who has no interest in the land has no right to redeem." *Id.; see also Johnson v. Dunkel,* 132 Colo. 383, 388, 288 P.2d 343, 346 (1955) (holding that a landowner who mistakenly claimed ownership of improvements on neighboring land subject to a treasurer's deed had no interest in the property to claim a right to redeem). Because redemption is favored over forfeiture, redemption statutes are liberally construed in favor of the party seeking redemption. *Notch Mountain,* 898 P.2d at 555.

### B.

Because Winter Park was formed as a limited partnership in 1973, the provisions of the Uniform Limited Partnership Law of 1931, §§ 7–61–101 to –130, 3A C.R.S. (1986 & 1996 Supp.), are controlling. *See* § 7–61–129.5, 3A C.R.S. (1986).

A limited partnership is a partnership formed by two or more persons, having as its members one or more general partners [7] who manage the business and are personally liable for partnership debts, and one or more limited partners who contribute capital and share profits but take no part in running the business and incur no liability beyond their capital contributions. § 7–61–102, 3A C.R.S. (1986); *Evans v. Galardi,* 16 Cal.3d 300, 128 Cal.Rptr. 25, 29, 546 P.2d 313, 317 (1976). A limited partnership is formed by filing a certificate of limited partnership in the office of the county clerk and recorder. § 7–61–103, 3A C.R.S. (1986).

---

**7.** The general partner in a limited partnership has the rights and powers of a partner in a partnership. § 7–61–110, 3A C.R.S. (1986).

Limited partners may contribute cash or other property to the partnership. § 7–61–105, 3A C.R.S. (1986). They are compensated for this investment by sharing profits according to the terms of the limited partnership certificate. § 7–61–116, 3A C.R.S. (1986). In addition to sharing profits, limited partners have the right to: (1) inspect the books of the partnership; (2) demand information regarding the partnership when it is just and reasonable; and (3) dissolve and wind up the partnership by decree of the court. § 7–61–111, 3A C.R.S. (1986).

Limited partners are liable for the debts of the partnership to the extent of returns paid out to them after the debt was incurred. § 7–61–118(4), 3A C.R.S. (1986). Limited partners are otherwise not liable for the debts of the partnership unless they assume a measure of control over the business. § 7–61–108, 3A C.R.S. (1986); *Alzado v. Blinder, Robinson & Co.*, 752 P.2d 544, 551 (Colo. 1988).

In defining the extent of the limited partners' interest, section 7–61–119, 3A C.R.S. (1986), provides that "[a] limited partner's interest in the partnership is personal property." Likewise, our court of appeals has found that limited partners only possess an interest in the partnership entity and do not have any legal or equitable right to partnership property. *Central Allied Profit Sharing Trust v. Bailey*, 759 P.2d 849, 850 (Colo. App.1988); *Caley Invs. I v. Lowe Family Assocs.*, 754 P.2d 793, 795 (Colo.App.1988). For this reason, limited partners may be viewed as investors who assume no risk in the venture except the possible loss of their capital investment. *See Caley*, 754 P.2d at 795.

### III.

Winter Park's certificate of limited partnership [8] provides that the partnership was formed to "acquire, hold for investment, develop and sell real estate located in Grand County, Colorado." To acquire this property, each limited partner was obligated to purchase at least one limited partnership unit at a cost of $5,000 per unit. Additionally, each limited partner was responsible for "extraordinary expenses" of up to $7,500 annually. Each unit represented a four percent interest in the capital of the partnership, and a four percent interest in the partnership's profits. Finally, the certificate provides that "[n]o Limited Partner has the right to demand or receive property other than cash in return for his contributions."

■ Even in light of the liberal construction we must give the limited partners' argument, the statutes, case law, and certificate of limited partnership make clear that Winter Park's limited partners do not have any interest in the real property of the partnership that entitles them to a right of redemption. Here, the limited partners' interest in the partnership was personal, concerned the partnership entity only, and did not amount to any right over the partnership property. *See* § 7–61–119; *Bailey*, 759 P.2d at 850; *Caley*, 754 P.2d at 795.

Furthermore, in this case, all transactions involving the limited partners were made on a cash-only basis. Therefore, the limited partners never possessed, nor came into contact with, the real property of the partnership. Because the limited partners had no discernible interest in Winter Park's real property, we hold that the treasurer correctly determined that the limited partners were not entitled to separate notice under section 39–11–128(1)(a).

Winter Park cites *Boyle v. Culp*, 159 Colo. 423, 412 P.2d 543 (1966), in support of the proposition that limited partners have a right to redeem the real property of the partnership from a tax sale. We held in *Boyle* that a corporate shareholder had an equitable or legal claim to redeem property from a tax sale prior to the issuance of a treasurer's deed. *Boyle*, 159 Colo. at 430, 412 P.2d at 546.[9] However, *Boyle* is distinguishable because while *Boyle* suggests that under certain circumstances corporate shareholders may hold an interest in corporate property for redemption purposes, it is clear that limited partners hold no such interest. *See* § 7–

---

**8.** Winter Park's certificate of limited partnership was recorded on June 6, 1974.

**9.** We view the holding in *Boyle* to be fact specific.

61–119; *Bailey*, 759 P.2d at 850; *Caley*, 754 P.2d at 795.[10]

Winter Park also argues that, under the reasoning of *Swofford v. Colorado National Bank*, 628 P.2d 184 (Colo.App.1981), those who have a right to redeem have an equitable interest in the property that entitles them to notice under section 39–11–128(1)(a).[11] We agree with Winter Park that one holding a right to redeem is entitled to notice; however, the bank in *Swofford* held a vested interest in real property that gave it the right to redeem. *Swofford*, 628 P.2d at 186. Because Winter Park's limited partners cannot assert any similarly vested interest in the real property of the partnership, *Swofford* is inapplicable. *See Johnson*, 132 Colo. at 387–88, 288 P.2d at 346.

## IV.

We do not believe that the limited partners possessed any interest in the real property of the partnership to justify separate notice under section 39–11–128(1)(a). We therefore affirm the court of appeals on different grounds.

KOURLIS, J., does not participate.

**10.** There are other factors that distinguish this case from *Boyle*. First, *Boyle* involved the right to redeem *before* the redemption period expired, whereas here we are being asked to disregard a treasurer's deed that has already been issued and relied upon by a purchaser. In light of the fact that the treasurer's conclusion of capacity to redeem is entitled to a presumption of validity, we refuse to extend *Boyle*'s holding to give the limited partners a right to redeem. *See Boyle*, 159 Colo. at 427, 412 P.2d at 545.

Second, in *Boyle*, evidence was presented that on prior occasions the redeeming shareholder's deceased husband had paid taxes on the property and that most or all of the corporate directors were deceased. The shareholder was thus allowed to redeem, in part because no one else was available to protect the interests of the corporation. *Id.* at 427–28, 412 P.2d at 545 (citing *Reuter v. Mobile Bldg. & Constr. Trades Council*,

274 Ala. 614, 150 So.2d 699, 702 (1963)). In the present case, however, the responsibility to redeem the property rested with a known general partner who received notice, yet allowed the redemption period to pass without acting to protect partnership assets.

**11.** In *Swofford*, the court of appeals was asked to decide whether a bank holding a security interest in real property was entitled to notice prior to the issuance of a treasurer's deed. The court of appeals found that although the bank's security interest was originally personal property, it had "ripened into an interest in real property by virtue of [the bank's] election to retain the collateral" after the debtor's default. *Swofford*, 628 P.2d at 186. The bank therefore had a right to redeem the property and was entitled to notice of the treasurer's deed application. *Id.* at 187. Because the bank was never notified, the court of appeals invalidated the treasurer's deed. *Id.*