## No. 16,034.

### FLADER v. CAMPBELL ET AL.
(207 P. [2d] 1189)

Decided May 2, 1949. Rehearing denied June 13, 1949.

Mr. CHARLES E. FRIEND, for plaintiff in error.

Mr. BENJAMIN E. SWEET, Mr. LENNART T. ERICKSON, for defendants in error.

*En Banc.*

MR. JUSTICE HAYS delivered the opinion of the court.

THIS is an action in ejectment brought by Herman A. Flader, as plaintiff, against L. Campbell and W. O. Perry, defendants, to recover possession of a quarter section of land in Arapahoe county. The right of possession of said land is here dependent upon the ownership thereof, which is the principal question in dispute. Both plaintiff and defendants allege title and pray for determination thereof. Since this action was started, the United States government, in condemnation proceedings, has acquired title to said land for use as an army bombing field, and is now in full possession thereof. In said condemnation proceedings the government has determined just compensation for the taking of said land and deposited same in the registry of the United States district court for the use of the owners of said land as their interests may appear. The trial court found in favor of defendants, and plaintiff brings error.

Patent to the land here involved was originally issued by the government to Peter Johnson, March 31, 1900, who died March 1, 1910. By decree of the county court of Denver, September 5, 1911, Everett G. Johnson and Florence A. Van Alstine were found to be the sole and only heirs at law of Peter Johnson, deceased, and that each was possessed of an undivided one-half interest in said property. Thereafter a quitclaim deed was executed by "Mrs. Florence A. Gregg" to Charles H. Reed, dated and acknowledged September 8, 1937, and recorded December 12, 1941. Said deed recited that the grantor above mentioned was the same person as Florence A. Van Alstine, mentioned in the decree of heirship, and that she was executing said deed as the sole and only heir at law of both Everett G. Johnson, deceased, and Peter Johnson, deceased. Plaintiff claims title through mesne conveyances from grantee Reed.

After the death of Peter Johnson, the original owner of the land, taxes for the year 1922 became due, payable and delinquent, and on February 15, 1923, the land was sold for said taxes and certificate of purchase issued to

W. C. Foster on account thereof, which was in due course assigned to Tax Service Corporation, which corporation received a tax or treasurer's deed July 26, 1927. By quitclaim deed the property was transferred by said corporation to E. B. Dill who in turn conveyed to the E. B. Dill Corporation.

■ No question is raised by either party as to the validity of the above tax deed or to the title acquired thereunder by the E. B. Dill Corporation, and the same constitutes the common source of title, which neither plaintiff nor defendants can, nor do, dispute. It is sufficient for either party hereto to prove a derivation of title from that corporation, without proving its title. *Bay State M. & T. Co. v. Jackson,* 27 Colo. 139, 60 Pac. 573; *Service v. West,* 60 Colo. 366, 153 Pac. 446; 18 Am. Jur., pp. 34, et seq., §§33, 34, and 40.

■ ■ The tax title vested in the E. B. Dill Corporation December 5, 1927, being valid and so recognized by all parties, cuts off all the right, title and interest held by Peter Johnson and his heirs as of July 26, 1927, the date of said tax deed, and the quitclaim deed from the alleged sole heir of the above mentioned deceased, September 8, 1937, could not and did not convey anything. Whatever title it attempted to convey had already become vested in the E. B. Dill Corporation by mesne conveyances from the original tax title holder, Tax Service Corporation; consequently, the only title plaintiff had, if any, at the time of the commencement of this action, was derived from the quitclaim deed dated August 12, 1937, acknowledged September 9, 1937, from the E. B. Dill Corporation to Charles H. Reed, plaintiff's grantor. This deed was allegedly executed on behalf of the corporation by Adelaide Coxe Dill, treasurer, and recited that she was "duly authorized under existing minutes and records of the board of directors, to execute this conveyance on behalf of the corporation." The truth of this recital is not here questioned.

■ It appears in connection with the deed last men-

tioned that the Dill corporation changed its name, by amending its articles of incorporation February 26, 1931, to "The Junior Trust Corporation," and that said corporation on October 15, 1934, became defunct and inoperative pursuant to chapter 41, section 83, '35 C.S.A., and no longer competent to do business in the state of Colorado except as is stated in the statute then in force, "said corporation may acquire, hold, or continue to hold, lease, mortgage, enjoy, sell and convey real estate."

It therefore appears that even though the E. B. Dill Corporation was defunct and inoperative for failure to comply with the corporation laws in respect to making reports and the payment of fees, it still held title to the real estate and had a lawful right on September 9, 1937, to convey the same through its proper officers. *Dominion Oil Co. v. Lamb, et al.*, 119 Colo. 62, 201 P. (2d) 372.

Notwithstanding the fact that Adelaide Coxe Dill, as treasurer of the E. B. Dill Corporation, executed a deed to said property to Charles H. Reed, September 9, 1937, she, as president of the Junior Trust Corporation, executed another deed for the same property April 30, 1938, to L. Campbell, and executed still another deed, as sole surviving director of the Junior Trust Corporation, to L. Campbell. Plaintiff claims under the Reed deed, and defendants under the Campbell deeds. No corporation seal was attached to any of the deeds, and it is not shown that the corporation had a seal. It necessarily follows that if the former deed to Reed executed September 9, 1937, is valid, there was no title vested in the Junior Trust Corporation, April 30, 1938, when its deed to Campbell was executed, and, of course, could not and did not pass title. The validity of the Reed deed becomes of prime importance.

It is contended by defendants that the Reed deed is invalid because: (1) There was no corporate seal attached thereto; and (2) that it was "executed after the corporation had changed its name to Junior Trust Corporation and became defunct." We have heretofore dis-

posed of the second contention by showing that under the above statute the title to real estate remains in the corporation even though it be "defunct and inoperative" and may be lawfully conveyed by the corporate officials. It is certain in this connection that Campbell acquired nothing through his deed from Mrs. Dill, as sole surviving director of the trust company, because the title was then vested in the corporation and not in the officers as trustees. It is equally true that if Campbell acquired any title from the Dill corporation, it was by virtue of the deed from the Junior Trust corporation to Campbell. Defendants are in the strange situation of claiming title through a deed from a corporation without a corporate seal attached, and at the same time advancing the argument that the prior Reed deed is of no effect because of the absence of such corporate seal. If we should hold that plaintiff's title was bad for the above reason, by the same token we must likewise hold that defendants' title is invalid.

Concerning a similar situation in *Bean v. Westwood,* 101 Colo. 288, 73 P. (2d) 386, we said: "If this corporation was the admitted owner of the property here involved, defendant's title, if not good under the deed which he received and which he in good faith obtained by exercising his option to purchase, the laws provide ways by which it may be perfected."

In passing it should be stated that no objection was made to the introduction of the deed from the Dill Corporation to Reed on account of the change in corporate name; that no corporate seal was attached; that the corporation was defunct and the sole and only objection made to the introduction of said deed in evidence was, "This deed is in the abstract and was in the abstract, so we are just burdening the record to put it in." Defendants are therefore in no position here, for the first time and under such circumstances, to urge said objections, and the trial court did not err in admitting the deed in evidence.

Defendants, however, do not exclusively rely upon the alleged title derived through the Dill chain. They

also rely upon a tax or treasurer's deed issued April 18, 1934, to L. Campbell based upon a tax sale November 26, 1927, for the taxes of 1926. It is evident, as the trial court found, that the question whether or not the defendants have title depends in the final analysis upon the validity of the last mentioned tax deed, to which issue we now address ourselves.

Plaintiff contends that said deed is invalid for the reason, among others, that the notice of application therefor was insufficient and that certain recitals therein are untrue.

Section 255, chapter 142, '35 C.S.A. (amended, S. L. '37, p. 1053), requires the notice to "state when the time of redemption shall expire, or when the tax deed shall be issued." Section 264, id., fixes the statutory period of redemption at three years from the date of the sale.

The notice here considered recites: "Notice is hereby given that on the 26th day of November, A. D. 1927, the following described property * * * was sold for the taxes for the year 1926 and purchased by H. C. Crowe. * * * That the time of redemption of said real estate from such tax sale will expire on the third day of February, A. D. 1934."

The recital in the certificate that the statutory period of redemption would expire February 3, 1934, was false, because such period expired November 26, 1930, being approximately three years before the notice was issued. Neither did said notice recite when the tax deed would issue. The notice did not speak the truth and the deed based thereon is void. *Young v. Rohan,* 77 Colo. 70, 234 Pac. 694; *Green v. Halsted,* 77 Colo. 578, 238 Pac. 40; *Denver v. Murry,* 82 Colo. 128, 257 Pac. 359; *Staples v. Todd,* 108 Colo. 386, 117 P. (2d) 1005; *Eshe v. Clough,* 116 Colo. 266, 179 P. (2d) 970; *Tewell v. Galbraith,* 119 Colo. 412, 205 P. (2d) 229.

Notwithstanding the above, defendants contend that plaintiff is estopped to question the validity of the deed by reason of certain equities said to exist in favor

of defendants. In defendants' brief in discussing this point, it is said: "All of these facts and the reasons why the equities are in favor of defendants are so well set forth in the lower court's findings, fols. 48-60, that we adopt the Court's findings and reasonings herein."

The portion of the trial court's findings to which reference is above made, is as follows:

"Right and equity are against the plaintiff. This is not the usual suit wherein the legal owner comes into court to oust the purchaser under tax title. In this case the plaintiff is a person with full knowledge of the tax title, standing by and attempting to obtain some advantage of the record tax title owner. Campbell's Treasurer's deed was obtained and recorded in 1934. In 1937 Flader obtained a quitclaim deed from one of the two heirs of the last fee owner, but failed to record it until December 12, 1941. In the meantime actual possession had been taken under the tax deed and improvements made. Plaintiff patently did not have confidence in this title in the fee owner chain because he bought up a quitclaim deed from a 1922 tax sale from a person whose authority is questionable to convey any of the property of a defunct corporation. He also bought an assignment of 1930 tax sale which was shortly thereafter redeemed by Campbell. At all times plaintiff knew of Campbell's record interest in the land and from July 27, 1937 (two months before this action was commenced) knew that defendant had redeemed from tax sale at a large expense. This was the date of the 1930 tax sale redemption by Campbell. The fact that plaintiff joined Perry as a defendant at the commencement of this suit also shows conclusively that plaintiff had knowledge that Perry had an interest in the land.

"In their Amended Fifth Affirmative Defense of Amended Answer the defendants plead estoppel by reason of the acts of the plaintiff. The Court believes this defense is well founded under the facts herein. The plaintiff obtained a quitclaim deed on August 12, 1937, and another on September 9, 1937, but kept them off the record

until December 21, 1941, over four years, during which time this suit was brought and a large sum of money was paid out by the defendants to redeem tax sales. 'One who fails to record a deed within a reasonable time is forbidden to assert it against one to whom it is unknown.' (Moore vs. Chalmers-Galloway Livestock Company, 90 Colo. 548-10 P2d, 10 Pac. 2-950.)

"Unless the tax deed on which Campbell bases his title is void on its face the matter should be resolved for the defendants.

" 'The withholding of a deed from the record is a suspicious circumstance.' (Smith vs. Smith, 24 Colo. 527-52 Pac. 790.)"

The trial court stated in its findings that the equities mentioned could not avail the defendants anything, if, as said, the deed was void on its face. It would seem equally true, under the foregoing authorities, that said equities are ineffectual to estop plaintiff where the deed is void because of false recitals in the notice of application for such deed. We find no basis for the contention that the equities above set forth can in any way estop plaintiff from asserting the invalidity of the tax deed in question. The validity of said deed depends upon the observance or failure to observe the mandatory requirements of the statute, and not upon equities. The rule of caveat emptor applies.

It is well to point out in passing that the improvements mentioned in the above findings consisted of a wire fence upon two sides of the land, the cost or value of which was estimated by one of the defendants to be $250, and the breaking of the ground preparatory to the planting of crops estimated by the same defendant to cost $500.

During the trial defendants moved to dismiss the action on two grounds: (1) That the plaintiff did not have title at the time the suit was brought; and (2) that the issues here presented are moot. The motion to dismiss was overruled by the trial court. The first ground is based upon the fact that the deed dated September 9,

1937, from the Flader Land Company to Herman A. Flader, plaintiff herein, was acknowledged May 19, 1947, and recorded May 22, 1947, and that this action was commenced September 22, 1937. It is contended by defendants that plaintiff did not have title to the land at the time of the commencement of this action, and that defendants' motion to dismiss should have been sustained.

Evidence was admitted without objection that plaintiff, Herman A. Flader, and not the Flader Land Company or Reed, provided the funds with which to pay the consideration for the deed from the Dill Corporation to Charles R. Reed, and from Adelaide Coxe Dill to Reed, and was to the effect that both Reed and the Flader corporation were acting as plaintiff's agents or representatives; it further appears that Reed was a business associate of Flader at the time of the transaction, and that the plaintiff owned all but qualifying shares of the stock in the Flader corporation; that Charles E. Friend handled most of the real-estate transactions of Flader and his company ever since the latter was organized, and was also the attorney for plaintiff and his company as well as the secretary of the company. The reasons for Flader and his attorney keeping plaintiff's title in the names of Reed and the company do not appear.

Defendant, W. O. Perry, is not in a position to complain of the above method of doing business, since he testified that he transacted his business in much the same manner; that he furnished the money to his relative, L. Campbell, with which to purchase his interest in the property, and that he took title in the name of L. Campbell, and had no record interest himself in the property until February 19, 1941, approximately four years after this action was commenced, at which time Campbell conveyed to defendants.

On the second ground for dismissal it is contended that the trial court lost jurisdiction to determine title and possession of the property here involved when the same was condemned by the federal government and compensation for the taking by eminent domain paid into

the registry of that court for the use of the parties as their interests may appear. Counsel for plaintiff herein testified that the federal court is holding the funds awaiting a determination herein of the ownership of the property at the time this action was commenced. This is disputed by defendants, but it does appear that no steps have apparently been taken by that court to determine the ownership of said funds. It seems clear that the question of ownership of lands located within the state is a matter to be determined by the Colorado courts since it involves the construction and interpretation of the laws of Colorado. The district court having acquired jurisdiction of the parties and subject matter before the condemnation proceedings were instituted, was not divested of jurisdiction thereby. Accordingly, the trial court did not err in overruling defendants' motion to dismiss.

The judgment of the trial court is reversed and the cause remanded with instructions to enter judgment for plaintiff conditioned upon payment to defendants of the amount found due for improvements made and taxes paid, as by law provided, from which there should be deducted the net income received from crops harvested while said premises were in possession of defendants.

MR. JUSTICE JACKSON and MR. JUSTICE STONE dissent.