Ruth MICHAELSON, Petitioner,

v.

Ervin MICHAELSON, Respondent.

No. 96SC145.

Supreme Court of Colorado,
En Banc.

June 23, 1997.

Timothy J. Lamb, P.C., Timothy J. Lamb, Katherine S. Lucht, Denver, for Petitioner.

James E. Mitchem, Allen P. Mitchem, Denver, for Respondent.

Justice HOBBS delivered the Opinion of the Court.

We granted certiorari[1] to review the judgment of the court of appeals in *Michaelson v. Michaelson,* 923 P.2d 237 (Colo.App.1995) (*Michaelson III*). The trial court had entered a total judgment of $538,813 in favor of Ruth Michaelson. The court of appeals reversed and remanded the case to the trial court with directions to recalculate the judgment amount in light of a quitclaim deed which Ruth Michaelson had executed.

We hold that, when she quitclaimed her interest in the three parcels of land, Ruth Michaelson did not: (1) transfer her interest as a fifty-percent shareholder in a corporation as to which her former husband, Ervin Michaelson, was the only other shareholder; or (2) waive her claim for breach of fiduciary duty against Ervin Michaelson's attempt, unilaterally, to dissolve that corporation[2] without notice to her. We conclude that the trial court correctly entered the judgment against Ervin Michaelson. Accordingly, we reverse the decision of the court of appeals and remand the case with directions to reinstate the judgment of the district court.

## I.

Ervin and Ruth Michaelson (the Michaelsons) were married in 1946. While married, they formed a Colorado corporation in 1952, Michaelson's Originals, Inc. (the corporation). The Michaelsons were each fifty-percent shareholders in the corporation, with each owning 2,500 shares of stock.

Although the Michaelsons were divorced on November 10, 1965, the permanent orders regarding division of marital property were not entered until 1989.[3] The district court valued the property as of 1965, the year of the divorce decree, and divided the property pursuant to the law and circumstances as they existed in 1965.

The corporation was not dissolved at the time of the divorce, and Ervin Michaelson remained the president, controlling shareholder, and a director of the corporation thereafter. Ruth Michaelson retained her ownership of 2,500 shares and thus remained a fifty-percent shareholder of the corporation. At the time of the divorce, the corporation held title to certain parcels of real property. The corporation failed to pay the *ad valorem* taxes for 1972 on the corporate real property, and the parcels were sold at a tax lien sale. In 1987, the parcels were conveyed to Ervin Michaelson, at his instance, by treasurer's deed.

The value of the assets of the corporation grew after 1965; however, profits were not shared with Ruth Michaelson. In December of 1987, Ervin Michaelson wrongfully attempted to dissolve the corporation. He filed a "Statement of Intent to Dissolve by Written Consent of Shareholders" and "Articles of Dissolution" with the Colorado Secre-

1. Certiorari was granted for the following issue:

   Did the court of appeals, by relying on Washington case law that conflicts with Colorado statutory law, err when it determined that equitable title to real estate owned by a dissolved corporation passed to its shareholders contrary to § 7–8–122(2), 3A C.R.S. (1986), and therefore when plaintiff/petitioner, a corporate stockholder, quitclaimed to defendant/respondent her interest in the real estate (title to which remained with the corporation) she also quitclaimed her right to

   recover damages for breach of fiduciary duty?

2. By our reference to dissolution of the corporation, we refer only to Ervin Michaelson's attempt to unilaterally dissolve the corporation, as those actions pertained to Ruth Michaelson's rights as a shareholder. We do not otherwise address the legal effect of Ervin Michaelson conduct.

3. The divorce action was appealed to this court in *Michaelson v. Michaelson,* 167 Colo. 58, 445 P.2d 211 (1968).

tary of State, which contained false statements to the effect that: (1) all shareholders had been given notice of any shareholder meeting and had consented to the dissolution; and (2) the assets of the corporation had been distributed among all the shareholders according to their rights and interests. But, Ruth Michaelson had not been given notice of the meeting, did not consent to dissolution of the corporation, and did not receive a distribution, cash or in-kind, based on her status as a shareholder upon dissolution or otherwise.

In February of 1988, Ruth Michaelson discovered that the corporation had been wrongfully dissolved without notice or distribution to her. Later that same year, she initiated a proceeding for permanent division of the marital property. At the hearing on the division of marital property, the district court determined that its decision must be based upon circumstances existing as of November 10, 1965, when the couple was divorced.[4] The properties owned by the parties as of 1965 and the corporation as of 1965 were valued as of that date. The marital property settlement consisted of both marital property and the value of pre–1965 corporate property. Marital property included real property privately owned by the Michaelsons, stock given to Ruth Michaelson by her parents, miscellaneous personal property, mining claims, and the children's bank accounts. The value of the pre–1965 corporate property included cash and real property held by the corporation at the time of the divorce. Specifically, the district court order stated:

> At the time of divorce, the assets of the Michaelson Originals, Inc., corporation consisted of Denver real estate, cash and other assets, totaling $338,545 as follows:

| | | Value |
|---|---|---|
| (A) | Real estate: | |
| | (1) Parts of Block 1, Norwood (123–135 S. Kalamath Street) | $112,901 |
| | (2) Block 6, Sumners (401–435 Santa Fe Drive and 931–985 West Fourth Avenue) | $196,121 |
| (B) | Cash: | $ 4,468 |
| (C) | Other assets: | $ 25,055 |
| | Total: | $338,545 |

The November 9, 1989 marital property division order, *nunc pro tunc*, June 13, 1989, stated that cash ($10,000) which had been received from a sale of property occurring while the divorce was pending was also part of the pre–1965 corporate property.

All of the pre–1965 corporate property was valued as of 1965 and no post–1965 valuation of corporate property was made in the marital property division. The district court determined the value of the marital property and the pre–1965 corporate property to be $517,917, and divided that amount equally between the Michaelsons. In addition, the district court awarded interest to Ruth Michaelson, due to Ervin Michaelson's wrongful withholding of funds and significant delay in distribution of the marital property. The court directed the Michaelsons to execute the necessary documents to exchange any property that needed to be exchanged. The district court did not address the disposition of either party's stock in the corporation.

Pursuant to the district court order, Ervin Michaelson paid the $800,000 award to Ruth Michaelson. This award included $258,959 (half of the marital property settlement) plus statutory, or moratory interest, as a result of Ervin Michaelson's wrongful withholding and delay in distribution of the marital property. Ruth Michaelson quitclaimed to Ervin Michaelson whatever interest she had in three real properties. The quitclaim deed was executed as a result of the marital property division order which stated: "In order to implement the division of properties herein provided for, each party is ordered to execute and deliver instruments [for the exchange of real property] necessary or proper to carry out this order." The quitclaim deed stated that Ruth Michaelson did

> remise, release, sell, convey and QUIT CLAIM unto the grantee [Ervin Michaelson] his heirs, successors and assigns, forever, *all the right title, interest, claim and demand which the grantor [Ruth Michaelson] has in and to the real property*, together with improvements, if any . . . .

---

4. The law as of 1965 required the trial court to determine relative fault of the two parties in

order to divide the marital property.

(Emphasis added.) No stock in the corporation was exchanged or surrendered by either party. Neither of the Michaelsons appealed the marital property division order.

On December 13, 1990, in her capacity as a fifty-percent shareholder of the corporation, Ruth Michaelson filed suit in Denver District Court against Ervin Michaelson for breach of fiduciary duty, fraud, and theft. She requested an accounting and sought damages for the wrongful 1987 corporate dissolution. The trial court granted Ervin Michaelson's motion for summary judgment on the fraud claim and later granted his motion to dismiss the claims for theft and an accounting, leaving for trial the sole issue of breach of fiduciary duty.

The district court ruled that Ruth Michaelson's continuing interest in the corporation as a shareholder permitted her suit for breach of fiduciary duty. The court determined that the marital property division had dealt only with the value of the corporate property as of the 1965 divorce and did not include the increase in value of the property after 1965. The trial court found that Ervin Michaelson had breached his fiduciary duty as president and director of Michaelson's Originals, Inc.:

> The corporation was dissolved without a quorum. The defendant filed false statements with the Secretary of State concerning the corporation, representing that there was an outstanding 2,500 shares, when, indeed, there were 5,000 shares. He represented to the I.R.S.—to the detriment of the plaintiff—that he was the sole shareholder. At the time of the dissolution of the corporation, he took for himself the total distribution of the corporate assets.

The trial court awarded Ruth Michaelson $401,008, plus $137,805 in interest from December 11, 1987, for a judgment of $538,813. In reaching this result, the trial court used the property valuations developed in the marital property division case as a benchmark to determine damages for the breach of fiduciary duty:

> the value of the corporate real estate at the time of dissolution of the corporation was $892,773. Plaintiff [Ruth Michaelson]

is entitled to half of that value, which is $446,366. However, she has been awarded the value of the property through 1965, and has been given a value of the property $169,273. Therefore, as a shareholder and in her capacity with the corporation, she was entitled to a distribution of the corporate real estate assets in December of 1987 of an additional $277,093.

Thus, the court found that Ruth Michaelson's share of the post–1965 increased value of the corporate property was $277,093. The court ruled that Ruth Michaelson was also entitled to $78,665, which amount was one-half of new assets acquired by the corporation after 1965. The fifty-percent share owed to Ruth Michaelson as a shareholder was awarded to her as damages for breach of fiduciary duty, to which interest thereon was added. The court found no non-economic damages. Ervin Michaelson appealed the district court order.

In the first court of appeals decision, that court reversed the district court judgment and remanded with directions to dismiss the case with prejudice. *See Michaelson v. Michaelson,* No. 92CA0052 (Colo.App. Apr.22, 1993) (not selected for official publication) (*Michaelson I* ). The court of appeals based its decision on the following points: (1) Ruth Michaelson's claims to corporate assets and proceeds were barred because the rights of each party had been determined in the marital property division case; and (2) Ruth Michaelson's claim for breach of fiduciary duty was barred by the doctrines of *res judicata* and collateral estoppel. We granted certiorari and reversed the court of appeals in *Michaelson v. Michaelson,* 884 P.2d 695 (Colo.1994) (*Michaelson II* ).

In the second court of appeals decision, that court ordered a significant reduction of damages to Ruth Michaelson, determining that proper consideration had not been given by the district court to the effect of Ruth Michaelson's quitclaim deed.

The court of appeals reasoned that Ruth Michaelson had already received a settlement for the properties for their increase in value from 1965 to 1989 and had conveyed, by the quitclaim deed, her equitable interest in the

real property. We do not agree. To the contrary, the marital property award included a corporate property valuation only up to the date of the divorce, November 10, 1965, and did not include post–1965 appreciation on the corporate property, nor did the quitclaim deed operate to alter Ruth Michaelson's rights as a shareholder, including her *pro rata* share in all of the property and assets of the corporation upon dissolution, after creditors were satisfied. Accordingly, we reverse the judgment of the court of appeals.

## II.

The case before us deals primarily with the effect of Ruth Michaelson's quitclaim deed. The court of appeals determined that, upon dissolution of the corporation, equitable title to corporate property passes to all record shareholders. Therefore, the execution of the quitclaim deed by Ruth Michaelson operated to divest her of any claim she had to the corporate properties enumerated in the deed. We disagree. Under Colorado law, title to corporate property remains in the corporation upon dissolution. The quitclaim deed had no effect on Ruth Michaelson's status as a shareholder or the distribution of corporate property and assets to which she was entitled as a *pro rata* participant.

## A.

### *Effect of the Quitclaim Deed*

▆ In construing any deed, our purpose is to give effect to the instrument. *See Notch Mountain Corp. v. Elliott,* 898 P.2d 550, 557 (Colo.1995). Unless ambiguity exists, "the intent should be determined from the four corners of the instrument." *Id.* We must consider the deed in its entirety, harmonize all its provisions, and give force and effect to all of its language if possible. *See Percifield v. Rosa,* 122 Colo. 167, 177, 220 P.2d 546, 551 (1950). We must not ascertain intent from "portions presented in isolated sentences and clauses," but from the deed as a whole. *Notch,* 898 P.2d at 557; *see Corlett v. Cox,* 138 Colo. 325, 331, 333 P.2d 619, 622 (1958).

With these principles in mind, we examine the language of this quitclaim deed. The granting clause states:

WITNESSETH, That the grantor for and in consideration of the sum of other valuable consideration and Ten and no/100 —— DOLLARS the receipt and sufficiency of which is hereby acknowledged, has remised, released, sold, conveyed and QUIT CLAIMED, and by these presents does remise, release, sell, convey and QUIT CLAIM unto the grantee [Ervin Michaelson], his heirs, successors and assigns, forever, *all the right, title, interest, claim and demand which the grantor has in and to the real property,* together with improvements, if any, situate, lying and being in the City and County of Denver and State of Colorado ....

(Emphasis added.) The property to be conveyed was described as follows:

Lots 1 through 13, Block 1, Norwood Addition;
Lots 9 through 15, Block 2, Norwood Addition; and
Lots 9 through 15, Block 6, Sumners Addition to Denver
also known by street and number as:
    123–135 South Kalamath
    164–176 South Kalamath
    401–435 Santa Fe Drive
    931–935 West 4th Avenue

In addition, the habendum clause stated:

TO HAVE AND TO HOLD the same, together with all and singular the appurtenances and privileges thereunto belonging or in anywise thereunto appertaining, and all the estate, right, title, interest and claim whatsoever, of the grantor, either in law or equity, to the only proper use, benefit and behoof of the grantee, his heirs and assigns forever.

▆ Ervin Michaelson argues that the language of the deed indicates an intent on the part of Ruth Michaelson to convey not only her then present individual interest in the parcels of property, but also her "equitable title" in the properties as a shareholder upon dissolution of the corporation. We disagree. The grant constituted a clear and unambigu-

ous conveyance of her individual ownership interest, if any, in the three enumerated parcels of land. *See Tuttle v. Burrows,* 852 P.2d 1314, 1316 (Colo.App.1992) ("It is the rule ... that a quitclaim deed does not convey land, but only the *grantor's present interest in the land, if any.*") (emphasis added).

The language of the deed does not convey Ruth Michaelson's shares of the corporation or her right to receive a shareholder distribution upon dissolution. To determine what Ruth Michaelson conveyed, we must identify what interest she owned in the three parcels, if any, at the time of the conveyance. Two of the three properties listed on the quitclaim deed were owned by the corporation; the titles to Norwood, Block 1, and Sumners, Block 6, were in the name of Michaelson's Originals, Inc.[5] Ruth Michaelson had no ownership interest in those two parcels and conveyed none by reason of the quitclaim deed. Rather, she was a shareholder of the corporation that owned those two parcels. However, Norwood, Block 2, was held by the Michaelsons individually as partners, not the corporation.[6] When she executed the quitclaim deed, Ruth Michaelson conveyed her ownership interest in Norwood, Block 2, to Ervin Michaelson. The trial court correctly did not include this property in the damages for breach of fiduciary duty.

## B.

### Corporation Retains Title to Property

Although ownership of two of the properties remained in the corporation after dissolution, Ervin Michaelson nevertheless argues that Ruth Michaelson obtained an equitable title to the parcels and conveyed that interest to him. *But see* § 7–8–122(2), 3A C.R.S. (1986) ("after dissolution, title to any corporate property not distributed or disposed of in the dissolution shall remain in the corpora-

tion"); § 7–8–105(2), 3A C.R.S. (1986) (the corporation shall distribute the remainder of its assets, "either in cash or in kind, among its shareholders according to their respective rights and interests").

The court of appeals agreed with Ervin Michaelson. Relying on *Zimmerman v. Kyte,* 53 Wash.App. 11, 765 P.2d 905 (1988), it determined that "equitable title to corporate property passes to all record shareholders or beneficial owners" upon dissolution of a corporation. *Michaelson III,* 923 P.2d at 240. The Washington court had ruled that, when a corporation ceases to exist, its assets and liabilities pass to the shareholders, subject to the claims of corporate creditors. *See Zimmerman,* 765 P.2d at 909. This is not the Colorado rule.

The Washington statute in effect in 1988 was virtually identical to section 7–8–122, 3A C.R.S. (1973), the controlling Colorado statute. However, section 23A.28.250 of the Washington Revised Code did not contain a provision similar to section 7–8–122(2), which provides that "title to any corporate property not distributed or disposed of in the dissolution shall remain in the corporation," § 7–8–122. Thus, the court of appeals' reliance upon *Zimmerman* is misplaced. The result in *Zimmerman* is explained by the fact that its legislature had failed to provide adequate guidance regarding the ownership of corporate property upon dissolution. *See Pacesetter Real Estate, Inc. v. Fasules,* 53 Wash. App. 463, 767 P.2d 961, 964–65 (1989) (the Washington legislature expressly provided for administrative dissolution following a corporation's failure to pay annual license fees, however, it failed to provide direction as to the status of the corporation so dissolved). As a result, the Washington court followed the equitable principle of vesting title in the shareholders upon administrative dissolution of a corporation.[7] *See Ban–Mac, Inc. v.*

---

5. Michaelson's Originals, Inc., was identified on the original deeds for these properties as the grantee and purchaser.

6. Norwood, Block 2, was listed by the court under the heading "remaining marital property" and was not determined to be corporate property in the marital property division.

7. The Washington legislature subsequently provided the missing guidance. Effective July 1, 1990, section 23A.28.250 of the Washington statute was repealed. The successor Washington statute provides, in pertinent part, that:

(1) A dissolved corporation continues its corporate existence but may not carry on any business except that appropriate to wind up

*King County*, 69 Wash.2d 49, 416 P.2d 694, 695 (1966) (adopting the principle that in the absence of a statute to the contrary, the legal title to corporate property passes by operation of law to the stockholders, who are beneficial owners).

■ In Colorado, title to corporate property does not vest in the shareholders upon dissolution; rather, it remains in the corporation. *See Flader v. Campbell*, 120 Colo. 66, 71, 207 P.2d 1188, 1191 (1949) (holding that although corporation was defunct and inoperative for failure to file corporate reports and pay corporate fees, "title to real estate remains in the corporation even though it be 'defunct and inoperative.'"). Section 7–8–122(2), as it existed at the time of the corporation's dissolution, stated that: "Notwithstanding any provision of this code to the contrary, after dissolution, title to any corporate property not distributed or disposed of in the dissolution shall remain in the corporation." [8]

■ In Colorado, "equitable title" to real property owned by a corporation does not pass to the shareholders upon dissolution of that corporation. Title remains in the corporation pending distribution to the shareholders of the remaining assets, in cash or in kind, after creditors of the corporation are satisfied. Section 7–8–105(2) required that this corporation "distribute the remainder of its assets, either in cash or in kind, among its shareholders according to their respective rights and interests." [9]

and liquidate its business and affairs, including:

. . . .

(d) Distributing its remaining property among its shareholders according to their interests . . .

. . . .

(2) *Dissolution of a corporation does not:*

(a) *Transfer title to a corporation's property*

. . . .

Wash. Rev.Code § 23B.14.050 (1996) (emphasis added).

8. The "Colorado Business Corporation Act," §§ 7–101–101 to 7–117–105, 3A C.R.S. (1996 Supp.), replaced the "Colorado Corporation Code," §§ 7–1–101 to 7–10–113, 3A C.R.S. (1986), on July 1, 1994. Section 7–114–105(2) of the Colorado Business Corporation Act provides, in relevant part, that:

## C.

### *Damages for Breach of Fiduciary Duty*

Likewise, no merit exists in Ervin Michaelson's claim that the quitclaim deed on November 22, 1989, operated to waive Ruth Michaelson's claim for breach of fiduciary duty. The 1965 divorce action did not terminate the corporate existence. Ruth Michaelson did not transfer her shares of stock to Ervin Michaelson, and she continued to be a shareholder of record.

■ As an officer and director of Michaelson Originals, Inc., Ervin Michaelson had a fiduciary duty to act in good faith and in a manner he reasonably believed to be in the best interests of the corporation and all of its shareholders, in this case Ruth Michaelson. *See Van Schaack Holdings, Ltd. v. Van Schaack*, 867 P.2d 892, 897 (Colo.1994) ("This duty encompasses the requirement that directors of a corporation and its controlling shareholders act with an extreme measure of candor, unselfishness, and good faith in relation to remaining shareholders."). *See also* Colorado Corporation Code §§ 7–5–101, –114, 3A C.R.S. (1986) (repealed 1994); Colorado Business Corporation Act §§ 7–108–401, –402, 3A C.R.S. (1996 Supp.). The record is replete with evidence of Ervin Michaelson's breach of fiduciary duty to Ruth Michaelson. For example, as an officer, director, and controlling shareholder, he allowed parcels of corporate-owned real property to go to a tax lien sale and purchased the property in his own name, without informing Ruth Michaelson. He filed false

(2) Dissolution of a corporation does not:

(a) Transfer title to the corporation's property

. . . .

9. Section 7–8–105(2) of the Colorado Corporation Code provides that:

(2) The corporation shall proceed to collect its assets, convey and dispose of such of its properties as are not to be distributed in kind to its shareholders, pay, satisfy, and discharge its liabilities and obligations, and do all other acts required to liquidate its business and affairs and, after paying or adequately providing for the payment of all its obligations, distribute the remainder of its assets, either in cash or in kind, among its shareholders according to their respective rights and interests.

documents with the Secretary of State, wrongfully attempting to dissolve the corporation. Upon the purported dissolution, he failed to make the required *pro rata* distribution to Ruth Michaelson. In Colorado, shareholders may recover damages for such a breach of fiduciary duty. *See Hudson v. American Founders Life Ins. Co.*, 151 Colo. 54, 61–62, 377 P.2d 391, 395 (1962); *River Management Corp.*, 829 P.2d at 404.

The court of appeals determined that Ruth Michaelson had already "been paid the value of her share of the real estate plus an appropriate amount for the increase of value of the real estate from 1965 to 1989," and so negated her award. *Michaelson III*, 923 P.2d at 240. However, the record does not support this determination.

Two relationships existed here. The first was the marital relationship which existed between 1946 and 1965. In this regard, the marital property division reflected: (1) the value of marital property up to the 1965 divorce date; and (2) the corporate property valued only from 1952 up to the 1965 divorce date. The second was the corporate relationship. The corporate property's *increase* in value from 1965 to 1989 was not included in the marital property division, nor were any properties acquired by the corporation after 1965.

In its oral ruling on April 30, 1992, the trial court addressed the potential overlap of the marital property settlement and the breach of fiduciary duty damages. First, the court noted that: "The Divorce Decree valued this property as of 1965, and awarded interest on that property on the 1965 basis." In addition, the court stated that

> the value of the corporate real estate at the time of dissolution of the corporation was $892,773. Plaintiff [Ruth Michaelson] is entitled to half of that value, which is $446,366. However, she has been awarded the value of the property through 1965, and has been given a value of the property

$169,273. Therefore, as a shareholder and in her capacity with the corporation, she was entitled to a distribution of the corporate real estate assets in December of 1987 of an additional $277,093.

The district court, on the occasion of the marital property division and then the breach of fiduciary duty action, properly addressed the three parcels of real estate of concern to the court of appeals; their 1965 values and their 1988 values were as follows:

| Property | 1965 Value | 1988 Value |
|---|---|---|
| Norwood, Block 1 | $112,901 | $383,365 |
| Norwood, Block 2 | $ 68,660 | $233,139 |
| Sumners, Block 6 | $196,121 | $665,947 |

The record establishes that Ruth Michaelson did not receive the appreciation in value of the two parcels of real estate owned by the corporation, Norwood, Block 1, and Sumners, Block 6, up to 1989 for the post–1965 period, but only her marital property share valued as of the divorce. One half of the difference between the 1965 value and the 1988 value of the two parcels was awarded to her as damages for breach of fiduciary duty against Ervin Michaelson in his corporate management capacity. The fiduciary duty damages did not include any amount for Norwood, Block 2, which was owned by the Michaelsons individually; Ruth Michaelson had conveyed her interest in that property to Ervin Michaelson by the quitclaim deed.

### III.

Accordingly, we reverse the judgment of the court of appeals and remand this case with directions to reinstate the district court's judgment in favor of Ruth Michaelson.