COLUMBUS INVESTMENTS, Petitioner,

v.

Richard G. LEWIS and Patricia
A. Lewis, Respondents.

No. 01SC340.

Supreme Court of Colorado,
En Banc.

June 17, 2002.

Golden, Mumby, Summers, Livingston & Kane, James Golden, J. Richard Livingston, Grand Junction, Colorado, Attorneys for Petitioner.

Traylor, Tompkins, Black & Gaty, Peter R. Black, Christopher B. Gaty, Grand Junction, Colorado, Attorneys for Respondents.

Mesa County Attorney's Office, Maurice Lyle Dechant, Mesa County Attorney, Angela M. Luedtke, Assistant Mesa County Attorney, Grand Junction, Colorado, For Amicus Curiae, County of Mesa, State of Colorado and the Mesa County Treasurer.

Justice HOBBS delivered the Opinion of the Court.

We granted certiorari [1] to review the court of appeals decision in *Lewis v. Columbus Investments,* 36 P.3d 75 (Colo.App.2001) to determine whether the county treasurer correctly followed the notice procedures of section 39–11–128(1)(a) in issuing notice of a pending tax deed following sale of a tax lien. The court of appeals reasoned that the original holders' assignment of their promissory note and deed of trust to Norwest Bank as collateral for a loan was only a security device; thus, the original holders retained an interest in the underlying real property for the purpose of section 39–11–128(1)(a) notice. The court of appeals invalidated the tax deed.

We reverse. We determine that the original holders of the promissory note and deed of trust assigned to Norwest all of the interest that would have entitled them to notice under section 39–11–128(1)(a). Norwest recorded the assignment under section 38–35–109(1), and the county treasurer did not err in relying on the interests of record at the time of her inquiry in not giving notice to the McClellands.

## I.

Richard and Patricia Lewis ("Lewises") acquired title to a parcel of real property in Fruita, Colorado ("the Fruita property") in 1989. The Lewises borrowed the funds to purchase the property from Glenn and Karen McClelland ("McClellands"). In exchange, the Lewises executed a promissory note to the McClellands in the principal amount of $25,425.00. A deed of trust on the Fruita property secured payment of the note. The McClellands recorded the deed of trust.

In 1995, the McClellands transferred both the Lewises' note and deed of trust to Norwest Bank in connection with a loan from the bank. The McClellands and Norwest executed a "Collateral Assignment of Interest in

1. We granted certiorari on the issue of:
   Whether the original beneficiaries of a note and deed of trust secured by real property, who subsequently transfer the note and deed to a bank pursuant to an agreement of which the stated purpose is "as security for indebted-

ness" but purports to "assign to the Bank all of Assignor's right, title and interest in and to the deed of trust," retain "an interest" in the real property sufficient to warrant notice of the pending issuance of a treasurer's deed pursuant to C.R.S. § 39–11–128.

Deed of Trust" ("the security agreement") that provided, in relevant part:

Assignment: As security for indebtedness owing by Assignor to Bank, Assignor has granted to Bank a security interest in a promissory note or other obligation secured by the above-described Deed of Trust and Assignment of Rents. For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, *Assignor hereby assigns to the Bank all of Assignor's right, title, and interest in and to the Deed of Trust and Assignment of Rents as additional security for Assignor's indebtedness owing to the Bank.*

(Emphasis added.)

The McClellands delivered both the note and the deed of trust to Norwest; the record is silent regarding their endorsement of the note. Norwest recorded the assignment with the Clerk and County Recorder's office in May of 1995.

Meanwhile, the Lewises failed to pay the property taxes levied and assessed against the Fruita property. As a result, the Treasurer of Mesa County sold a tax lien on the Fruita property. Columbus Investments purchased the tax lien. After the statutory redemption period expired, Columbus Investments asked the county treasurer to issue it a tax deed for the property.[2]

The treasurer hired a title company to research the interests of record in the Fruita property, pursuant to section 39–11–128(1)(a), 11 C.R.S. (2001). This statute governs notice to parties with interests of record. The title report advised:

We have searched our records of documents recorded in the office of the Mesa County Clerk and Recorder, and find that the following appear to be parties who have acquired a record interest in the following described real property: ... Richard G. and Patricia A. Lewis, ... Norwest Bank Grand Junction, .... Charles C. Brown, Robert S. Burton III, and William D. Langford, ... Columbus Investments.

Based upon the title report, the treasurer provided notice of the pending issuance of the tax deed to the Lewises, Columbus Investments, Norwest, and other parties by certified mail, but not to the McClellands. The post office returned the Lewises' notice to the treasurer because their forwarding address had expired.[3]

Following expiration of the redemption period, the treasurer issued a tax deed to Columbus Investments. Columbus Investments recorded the deed on January 24, 1997. *See* § 38–35–109(1), 10 C.R.S. (2001); § 39–11–136, 11 C.R.S. (2001). When the Lewises learned of the deed, they filed a quiet title action. They asserted that the treasurer's deed was void because the treasurer violated section 39–11–128(1)(a) by not notifying the McClellands.

On cross motions for summary judgment, the trial court held that the McClellands' agreement with Norwest did not divest them of the right to notice, rendering the tax deed void. The court of appeals agreed with the trial court, one judge dissenting. We disagree with the trial court and the court of appeals.

The treasurer had no obligation to notify the McClellands about the purchase of the tax lien and issuance of the tax deed. They had assigned all of their right, title, and interest in the note and deed of trust to Norwest. The treasurer relied on the recorded assignment. Accordingly, we reverse

---

2. Colorado law gives any person having a legal or equitable claim to the property a right to redeem the tax lien. § 39–12–103(1), 11 C.R.S. (2001). Redemption consists of a payment of the amount of taxes, delinquent interest and costs for which the tax lien on the property was sold, together with redemption interest and the amount of taxes accruing after the tax lien sale. § 39–12–103(3), 11 C.R.S. (2001). If a party entitled to redeem the property does not do so within the statutory redemption period, the tax lien holder may take title to the property through

a treasurer-issued tax deed. *See* 39–11–120, 11 C.R.S. (2001); *cf. Telluride Resort & Spa, L.P. v. Colo. Dep't of Revenue*, 40 P.3d 1260, 1266 (Colo. 2002).

3. At the time, the Lewises lived and worked out of the country. They later asserted that they had not received actual notice of the pending issuance of the tax deed. However, the treasurer met the diligent inquiry and newspaper publication requirements of section 39–11–128(a) & (b).

the judgment of the court of appeals and remand with instructions to enter summary judgment for Columbus Investments.

## II.

We determine that the original holders of the promissory note and deed of trust, the McClellands, assigned to Norwest all of the interest that would have entitled them to notice under section 39–11–128(1)(a). Norwest recorded the assignment under section 38–35–109(1), and the county treasurer did not err in relying on the interests of record at the time of her inquiry in not giving notice to the McClellands.

We review de novo a summary judgment. *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.*, 901 P.2d 1251, 1256 (Colo.1995). Colorado law requires us to construe statutes so as to render title and interest in real property secure and marketable and not subject to defeat by technical or strict construction or defects. *See* § 38–34–101, 10 C.R.S. (2001).

We proceed with our analysis by examining the section 39–11–128(1)(a) notice requirement. We then discuss whether the McClellands maintained an interest in the property for purposes of the section 38–11–128(1)(a) notice requirement, following their transaction with Norwest.

### A.

Section 39–11–128(1)(a) Notice Requirement

Section 39–11–128 sets forth the statutory procedure governing issuance of a tax deed. Section 39–11–128(1)(a) lists the parties that the treasurer must notify:

> The treasurer shall serve or caused to be served, by personal service or by either registered or certified mail, a notice of such purchase *on every person in actual possession or occupancy of such land, lot, or claim,* and also on the person in whose name the same was taxed or specially assessed if, upon diligent inquiry, such person can be found in the county or if his residence outside the county is known, *and upon all persons having an interest or title of record in or to the same* if, upon diligent inquiry, the residence of such persons can be determined, not more than five months nor less than three months before the time of issuance of such deed.

§ 39–11–128(1)(a), 11 C.R.S. (2001)(emphasis added). This paragraph requires the treasurer to notify all persons having "an interest or title of record" in real property who have the right of redemption. *Winter Park Devil's Thumb Inv. Co. v. BMS Partnership,* 926 P.2d 1253, 1255 (Colo.1996).

In this case, prior to executing the security agreement and making their assignment to Norwest, the McClellands possessed a promissory note secured by a deed of trust on the Fruita property. A deed of trust in real property given as security for a debt is a mortgage. *Morris v. Cheney,* 81 Colo. 393, 395, 255 P. 987, 988 (1927). A mortgage is not a conveyance of a real property interest, because Colorado subscribes to a lien theory of mortgages. § 38–35–117, 10 C.R.S. (2001). Although a deed of trust does not create an ownership interest in real property, it does constitute a legal or equitable interest in real property for the purposes of the section 39–11–128(1)(a) notice requirement. *See Notch Mountain Corp. v. Elliott,* 898 P.2d 550, 555 (Colo.1995).

The treasurer properly gave Norwest notice because it had recorded the McClellands' assignment to it of the note and deed of trust. The question here is whether the McClellands were also entitled to notice under section 39–11–128(1)(a). The Lewises argue that the McClellands retained an interest in the property entitling them to notice because the assignment was only a security arrangement.

We agree that the McClellands and Norwest had a security arrangement regarding the loan the McClellands took out with Norwest, but the McClellands as additional collateral also assigned all of the right, title, and interest in the deed of trust—their only interest in the real property—to Norwest. Under Colorado law, the agreement between the parties ultimately controls the security and real property interests of those parties.

## B.

## Security Interests and Real Property Interests

The transfer or assignment of a negotiable promissory note carries with it, as an incident, the deed of trust or mortgage upon real estate or chattels that secure its payment.[4] *Stetler v. Winegar*, 75 Colo. 500, 502–03, 226 P. 858, 859 (1924). The scope of remedies provided by perfection of a security interest is the subject of section 4–9–607(a)(1):

> If so agreed, and in any event upon default a secured party:
>
> (1) May notify a[ ] . . . person obligated on collateral to make payment or otherwise render performance to or for the benefit of the secured party;
>
> . . .
>
> (3) May enforce the obligations of an account debtor or other person obligated on collateral and exercise the rights of the debtor with respect to the obligation of the account debtor or other person obligated on collateral to make payment or otherwise render performance to the debtor, and with respect to any property that secures the obligations of the account debtor or other person obligated on the collateral . . . .

§ 4–9–607(a), 2 C.R.S. (2001)(emphasis added). Thus, either by agreement, or upon default, the secured pledgee can deem itself to be the owner of the mortgage loan, can demand that all further payments by the mortgagor be made directly to it, and can foreclose the mortgagor or sue on the note. *See* Nelson & White, *supra*, at 440.

The Lewises contend that the agreement between the McClellands and Norwest took place in the context of a security transaction under Article 9 of the UCC; thus, so the argument proceeds, the McClellands transferred only a security interest and retained their right to the section 39–11–128(1)(a) notice. While we agree that Article 9 of the UCC governs security interests, other law governs real property interests.

### 1. Article 9 of the UCC

Article 9 of the UCC defines the circumstances under which a party may obtain a security interest in notes or other instruments; this section also sets forth the rights of a secured party. § 4–9–102(1)(a), 2 C.R.S. (2000)[5] ("Any transaction intended to create a security interest in personal property or fixtures, including instruments and general intangibles, is a security interest governed by Article 9 of the UCC."). Several requirements pertain to perfection of a security interest. A security interest is enforceable if: (1) the collateral is in possession of the secured party; (2) value has been given; and (3) the debtor has rights in the collateral. § 4–9–203, 2 C.R.S. (2000).[6]

However, Article 9 governs only that part of the transaction involving personal property; it does not affect rights in the underlying real estate. *See* § 4–9–101, 2 C.R.S. (2000) official cmt. ("The main purpose of the Section is to bring all consensual security interests in personal property and fixtures under this Article . . ."); *Jackson County Fed. Sav. & Loan Ass'n v. Maduff Mortgage Corp.*, 608 F.Supp. 588, 593 (D.Colo.1985). Section 4–9–102 emphasizes that Article 9 does not apply to *non-personal property* rights that may

---

**4.** In the context of discussing the requirements for a transfer between the parties to the transaction, commentators observe:

> Between the parties to a transfer the assignment or negotiation of the note itself is all that must be done. It is unnecessary to have any separate document purporting to transfer or assign the mortgage on the real estate, for it will follow the obligation automatically.

1 Grant S. Nelson & Dale A. Whitman, *Real Estate Finance Law*, 429 (4th ed.2001).

**5.** The General Assembly repealed and re-enacted the substantive provisions of Article 9, effective

July 1, 2001. § 4–9–701, 2 C.R.S. (2001). The Act's Savings Clause provides in part: "This act does not affect an action, case or proceeding commenced before July 1, 2001." § 4–9–702(c), 2 C.R.S. (2001). Thus, we apply the provisions of Article 9 prior to the re-enactment because this case commenced before July 1, 2001.

**6.** The parties do not dispute the fact that Norwest possessed a perfected security interest in the note pursuant to Article 9. Norwest was in possession of the note and gave value for it in the form of a loan to the McClellands.

underlie transactions governed by Article 9. It provides:

> The application of this article to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this article does not apply.

§ 4–9–102(3), 2 C.R.S. (2000).

The reporter's commentary accompanying the Uniform Commercial Code explains the impact of section 4–9–102(3) on choice of law. Utilizing a fact pattern similar to the case before us, this comment stresses that "other law" determines the effect of rights under the mortgage. Comment 4 reads:

> The owner of Blackacre borrows 10,000 from his neighbor, and secures his note by a mortgage on Blackacre. This Article is not applicable to the creation of the real estate mortgage. Nor is it applicable to a sale of the note by the mortgagee, even though the mortgagee continues to secure the note. However, when the mortgagee pledges the note to secure his own obligation to X, this Article applies to the security interest thus created, which is a security interest in an instrument even though the interest is secured by a real estate mortgage. *This Article leaves to other law the question of the effect on rights under the mortgage of delivery or non-delivery of the mortgage or of recording or non-recording of an assignment of the mortgagee's interest.* See section 9–104(j). But under Section 3–304(5) recording of the assignment does not of itself prevent X from holding the note in due course.

§ 4–9–102 cmt. 4, 2 C.R.S. (2000)(emphasis added).

This comment limits the application of Article 9 to only that part of the transaction involving a security interest in an instrument. Article 9 makes clear that a party's acquisition of a perfected security interest under Article 9 does not prevent that party from also acquiring the pledgor's real property interest.

In order to determine if the McClellands transferred all of their interest in the Fruita property for the purposes of section 39–11–128(1)(a) notice, we therefore look to "other law" and the terms of the agreement between the McClellands and Norwest.

## 2. Terms of the Agreement

[12, 13] Because "a security agreement is effective according to its terms between the parties," § 4–9–201, 2 C.R.S. (2000), the agreement between the parties may include both a security device and an assignment of the assignor's interest in the real property. The intent of the parties is determined primarily from the language of the contract itself. *In re May*, 756 P.2d 362, 369 (Colo. 1988). The terms of the contract receive their plain and ordinary meaning. *Cache Nat'l Bank v. Lusher*, 882 P.2d 952, 957 (Colo.1994).

Nelson and White conclude that the obvious starting point for analysis of the pledgor-pledgee relationship is the agreement between the parties.[7] Nelson & White, *supra*, at 443; *Nichols v. Cadle Co.*, 139 F.3d 59, 62 (1st Cir.1998) (finding that agreement reserved to pledgor right to collect and foreclose mortgage loan; pledgor was the mortgagee under Massachusetts statute); *Prairie Props., L.L.C. v. McNeill*, 996 S.W.2d 635, 639–40 (Mo.App.1999)(stating that agreement gave pledgee the right to enforce or release pledged mortgage note when debt secured by pledge was in default).

In its decision in this case, the court of appeals pointed out that the record does not show whether the McClellands endorsed the note to Norwest. In the absence of demonstrated endorsement, the court of appeals concluded that the McClellands retained a property interest for section 39–11–128(1)(a) notification purposes. *Lewis*, 36 P.3d at 78. In support of the court of appeals' conclusion, real estate law commentators explain that, "if

---

7. The court of appeals misapplied *Swofford v. Colorado National Bank*, 628 P.2d 184 (Colo.App. 1981), in making its decision in the case before us. In *Swofford*, the court found that the Bank was entitled to notice when its loan went into default. *Swofford*, 628 P.2d at 184. *Swofford* does not address the effect of a written assignment, such as the one that the treasurer relied upon in this case.

there is no endorsement, transfer of the note will still vest the right of enforcement in the transferee, but he or she cannot be a holder in due course." Nelson & Whitman, *supra*, at 428.

■ However, an assignee may acquire all of the rights formerly held by the assignor even absent endorsement. *See Barclay Receivables Co. v. Mountain Majesty, Ltd.*, 903 P.2d 37, 39 (Colo.App.1995)(holding that an assignee of a note who is not a holder because the note lacks endorsement may seek recovery if the assignee proves a valid assignment). The McClellands assigned all of their interest to Norwest as additional collateral for the bank's loan.

### 3. Legislative Policy Considerations

Several policies of the General Assembly support our decision that the McClellands did not require notice under section 39–11–128(1)(a). First, section 4–9–207 protected the McClellands from any loss that might occur if Norwest had failed as the security holder to exercise reasonable care in the custody and preservation of the note and deed of trust. § 4–9–207, 2 C.R.S. (2000). Section 4–9–207 provides that:

> (1) A secured party must use reasonable care in the custody and preservation of collateral in his possession. In the case of an instrument or chattel paper reasonable care includes taking necessary steps to preserve rights against prior parties unless otherwise agreed.

§ 4–9–207(1), 2 C.R.S. (2000). Statutory notice under section 39–11–128 was not necessary to protect the McClellands' interests.[8]

Second, deeds of trust are frequently sold and assignments made. The treasurer looks to "interests of record" when conducting her diligent inquiry under section 39–11–128. The treasurer need not speculate whether the word "all" means less than all. Here, the treasurer reasonably relied on the record at the time of the inquiry.

### C.

### The McClellands' Assignment

The McClellands assigned to Norwest all of the interest that gave them the right to the section 39–11–128 notice. Under the court of appeals' ruling, county treasurers would have to look behind and ignore the comprehensive language of the assignment.

The title company's search of the records for the treasurer clearly reflected the breadth of the McClellands' assignment:

> Assignor hereby assigns to the Bank all of Assignor's right, title, and interest in and to the Deed of Trust and Assignment of Rents as additional security for Assignor's indebtedness owing to the bank.

In order to show that the assignment was simply another form of security interest, the court of appeals pointed out that the caption of the document said "Collateral Assignment of Interest in Deed of Trust." However, while the assignment may have been made as security, it was complete. The McClellands assigned all of their legal and equitable interest in the property to Norwest.

■■ Only when the terms of an agreement are ambiguous, or are used in some special or technical sense not apparent from the contractual document itself, may the court look beyond the four corners of the agreement in order to determine the meaning intended by the parties. *KN Energy, Inc. v. Great W. Sugar Co.*, 698 P.2d 769, 776 (Colo.1985). Whether an ambiguity exists, as a matter of law, is for the court to determine. *Id.*

We give security agreements effect according to their terms. § 4–9–201, 2 C.R.S. (2000). Because the agreement included the comprehensive assignment, Norwest obtained the right of the McClellands, the original holders of the deed of trust, to the trea-

---

8. Under section 39–11–136, the tax deed executed by the treasurer vests in the purchaser of the tax lien all the right, title, interest, and estate of the former owner of the land conveyed. Thus, the new owner takes the property subject to deeds of trust of record, such as the one the McClellands assigned to Norwest in this case. In Colorado, foreclosure of deeds of trust typically proceeds through the public trustee. *See* § 38–38–101—506; *Telluride Resort & Spa, L.P.*, 40 P.3d at 1264–65.

surer's notice under section 39–11–128(1)(a). § 4–3–203(b); § 4–9–607(a), 2 C.R.S. (2000).

The McClellands would regain a right of notice only upon: (1) payment of the loan Norwest made to them, and (2) Norwest's consequent re-assignment and redelivery of the note and deed of trust to the McClellands. The statutes do not contemplate voiding the tax deed for such a hypothetical.

Exercising the required diligence, the county treasurer gave notice to the parties with an interest of record in the Fruita property for the purposes of 39–11–128(1)(a). This did not include the McClellands.

### III.

Accordingly, we reverse the judgment of the court of appeals and remand with instructions to enter summary judgment for Columbus Investments.