24CA2104 Banghart Properties v Colorado Mills 10-09-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA2104
Prowers County District Court No. 24CV30004
Honorable Mike Davidson, Judge

Banghart Properties, LLC,

Plaintiff-Appellant,

v.

Colorado Mills, LLC,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE FOX
Brown and Meirink, JJ. concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 9, 2025

Pitler and Associates, P.C., Robert L. Pitler, Aurora, Colorado, for Plaintiff-Appellant

Allen Vellone Wolf Helfrich & Factor P.C., Patrick D. Vellone, Drew J. Horowitz, Averil K. Andrews, Denver, Colorado, for Defendant-Appellee

¶ 1     Plaintiff, Banghart Properties, LLC (Banghart), appeals the district court's judgment dismissing its complaint against defendant, Colorado Mills, LLC (Mills), and the court's order refusing Banghart's subsequent motion for leave to file a second amended complaint (SAC).  We decline to review the dismissal but affirm the district court's refusal to allow the amendment.

## I.     Background

¶ 2     Banghart had two contracts to sell eight million pounds of "high oleic sunflower seeds" to Mills by March 2023 (the contracts).  The first contract, "Purchase Agreement #2220HO," dated March 3, 2022, was for five million pounds of seeds and listed a "term" of "2022 Crop – Picked up Onida, SD area – Oct 2022 – Mar 2023."  The second contract, "Purchase Agreement #22670," dated November 8, 2022, was for three million pounds of seeds and listed a "term" of "2022 Crop – Picked up – January to March 2023."  The first contract's "price" was "$35.00/cwt FOB sellers['] location," and the second contract's "price" was "$28.75/cwt FOB sellers[']

1

location."[1]  While most of the seeds were delivered by March 2023, some shipments arrived after that deadline.

¶ 3      In February 2024, Banghart sued Mills for breach of contract, noneconomic damages,[2] and breach of the implied covenant of good faith and fair dealing, alleging that "in March-April 2023" Mills wrongly refused to arrange and pay for shipment of the seeds and canceled the contracts.  Banghart argued that the parties "established a course of dealing[] where Mill[s] submit[ted] a purchase order that describe[d] quantity, price and terms[,] including FOB Seller with Mills hiring the common carrier to pick up the [seeds] for Mill[s] at Banghart's locations."  According to Banghart, Mills "had the duty to contract for and arrange for the common carrier pickup" of the seeds and "willfully and improperly

---

[1] "Cwt" stands for "hundredweight," Merriam-Webster Dictionary, https://perma.cc/W3DE-6QJA, which itself refers to "a unit of weight equal to 100 pounds," Merriam-Webster Dictionary, https://perma.cc/4RR7-77WK; *see also Segelke v. Pet Inc.*, 528 P.2d 929, 930 (Colo. App. 1974) (not published pursuant to C.A.R. 35(f)) ("The contract which the parties executed in February 1966 provided that plaintiff was to sell to defendant 30,000 hundredweights (cwt.) of potatoes during the coming season.").
[2] Banghart's "claim" for noneconomic damages was based on theories that Mills acted intentionally, willfully, and with malice aforethought and that Mills also caused Banghart "anxiety, distress and worry."

breached the two contracts" by refusing to do so. Banghart alleged that a decrease in the price of seeds motivated Mills' sudden refusal.

¶ 4     Mills moved to dismiss the complaint for failure to state a claim upon which relief could be granted pursuant to C.R.C.P. 12(b)(5). Mills argued that the contracts' "FOB Seller" price and March 2023 deadline plainly indicated that Banghart was required to pay for all the seeds' delivery by March 2023. According to Mills, it was Banghart that breached the contracts by failing to timely deliver the seeds, and Mills was not obligated to ship the seeds or pay for seeds received after March 2023.

¶ 5     The district court ruled in Mills' favor. The court reasoned that the contracts obligated Banghart to sell Mills the seeds "no later than March 2023," and the language "FOB sellers['] location" unambiguously meant that Banghart had to arrange and pay for shipping. The court rejected Banghart's course of dealing and course of performance arguments because these doctrines cannot contradict the express terms of a written contract. And because Mills had not breached the contracts, Banghart had no claim for

3

damages, so the court dismissed Banghart's complaint on July 11, 2024.

¶ 6    Banghart later moved to amend the complaint but raised the same three claims on the same grounds as in the original complaint. Before Mills responded or the court ruled on the first amended complaint, Banghart requested leave to file the SAC. The proposed SAC added detail to Banghart's allegations. For example, Banghart included "tickets" as an exhibit to the SAC, evidencing Banghart's post-March 2023 deliveries to Mills to support the course of performance argument. The SAC also alleged that the parties agreed to extend the contracts' deadline, as evidenced by the course of performance shown by the tickets, but conceded that Mills "fully performed on [the first] contract." Regardless, Banghart alleged that Mills had a "continuing duty to purchase 2,842,431 pounds of seeds as required by [the second] contract." Despite these changes, however, Banghart's SAC substantively raised the same three claims as the original complaint.[3]

---

[3] Banghart's SAC dropped the theory that Mills caused Banghart "anxiety, distress and worry."

¶ 7    The court rejected Banghart's request to file the SAC because the SAC "advanced the same arguments that the court rejected" in the original complaint.  The court found the requested amendment to be "futile" because (1) Banghart relied on the rejected course of performance arguments, and (2) the controlling written contracts plainly disputed Banghart's claims.  The court further found that the SAC was "vexatious" and that, "by acting as if the [c]ourt never issued [its] order, [Banghart engaged] in stubbornly litigious conduct that has caused [Mills] to unnecessarily incur additional attorney fees in responding to the motion."  Invoking section 13-17-102(4), C.R.S. 2025, the court awarded Mills "reasonable attorney fees."  This appeal followed.

## II.    Issues on Appeal

¶ 8    Banghart raises three arguments on appeal.  First, Banghart argues that the district court misinterpreted the meaning of the "FOB sellers['] location" language to conclude that Banghart — not Mills — breached the contracts.  Second, Banghart argues that the parties' course of performance and their later oral agreement modified the contracts.  Third, Banghart argues that the court erred

by deeming the SAC futile. Mills, in turn, disputes these contentions and requests appellate attorney fees.

¶ 9 Because Banghart did not timely appeal the district court's July 11, 2024, dismissal order, challenges to that order are not properly before us. *See* C.A.R. 4. However, in assessing whether Banghart's proposed amendments were futile, we must examine the original complaint's deficiencies.

### III. Analysis

#### A. Standard of Review and Applicable Legal Principles

¶ 10 "We review a district court's decision denying a motion for leave to amend for an abuse of discretion. But we review de novo a district court's determination that an amendment would be futile because the amended complaint couldn't survive a motion to dismiss." *Houser v. CenturyLink, Inc.*, 2022 COA 37, ¶ 47 (citations omitted). A district court may deny leave to amend a complaint for futility "if it is legally insufficient or fails to cure defects in the previous pleadings." *Id.* at ¶ 48.

¶ 11 We review contract interpretation de novo, and our "primary goal is to give effect to the parties' intent." *French v. Centura Health Corp.*, 2022 CO 20, ¶¶ 24-25. To determine the parties' intent, we

6

first look to "the language of the instrument itself," and "[w]hen a written contract is complete and free from ambiguity, we will deem it to express the parties' intent and enforce it according to its terms." *Id.* at ¶ 25.

¶ 12    "Whether an ambiguity exists, as a matter of law, is for the court to determine." *Columbus Invs. v. Lewis*, 48 P.3d 1222, 1228 (Colo. 2002).  We undertake "decid[ing] whether provisions of an agreement are ambiguous by examining the instrument's language and construing that language in harmony with the plain and generally accepted meaning of the words employed" to discern whether a contract's terms are "susceptible of more than one reasonable interpretation." *French*, ¶ 25.

## B.    Application

¶ 13    Recall that the district court concluded that Banghart's original complaint failed to state a claim.  *See* C.R.C.P. 12(b)(5); *Carbajal v. Wells Fargo Bank, N.A.*, 2020 COA 49, ¶ 12.  Banghart's proposed SAC relied on the same theories as its original complaint and failed to cure the defects of the prior complaint, so the court properly denied Banghart leave to file the SAC based on its futility. *See Houser*, ¶¶ 47-48.

7

### 1. Breach of Contract and FOB

¶ 14 Banghart's SAC alleges a contractual breach. In Colorado, to establish breach of contract, a plaintiff must prove the following elements by a preponderance of the evidence: "(1) the existence of a contract, (2) the plaintiff's performance of the contract or justification for nonperformance, (3) the defendant's failure to perform the contract, and (4) the plaintiff's damages as a result of the defendant's failure to perform the contract." *Univ. of Denv. v. Doe*, 2024 CO 27, ¶ 46.

¶ 15 Elements two and three are contested in this case — whether Banghart performed its obligations under the contract and, if so, whether Mills failed to perform. Determining whether Banghart breached the contract requires interpreting the "FOB sellers['] location" language in the contracts. And whether Mills breached the contracts depends on whether course of performance could modify the contracts.

¶ 16 F.O.B., or "free on board," is statutorily defined in Colorado Uniform Commercial Code (UCC) section 4-2-319(1), C.R.S. 2025, which says that, "[u]nless otherwise agreed[,] the term F.O.B. . . . at a named place, even though used only in connection with the stated

price, is a delivery term." When the term is "F.O.B. the place of shipment, *the seller* must at that place ship the goods . . . and bear the expense and risk of putting them into the possession of the carrier." § 4-2-319(1)(a) (emphasis added).

¶ 17    The contracts unambiguously obligated Banghart to sell Mills the seeds by March 2023. And the "FOB sellers['] location" language unambiguously obligated Banghart to arrange and pay for shipping. *See id.* There is no ambiguity in the contracts, and we therefore must enforce them as written. *See Columbus Invs.*, 48 P.3d at 1228; *French*, ¶ 25.

¶ 18    Given these clear terms, Banghart breached the contracts when it refused to arrange and pay for shipping of all seeds by March 2023. Mills could then reject the remainder of the undelivered seeds — regardless of whether it accepted partial late shipments or paid some of the prior shipping costs. *See* § 4-2-601(a), (c), C.R.S. 2025 ("[I]f the goods or the tender of delivery fail *in any respect* to conform to the contract, the buyer may: (a) Reject the whole; or . . . (c) Accept any . . . units and reject the rest." (emphasis added)); *see also* U.C.C. § 2-601 cmt. 1 (A.L.I. & Unif. L.

9

Comm'n 2022) ("Partial acceptance is permitted whether the part of the goods accepted conforms or not.").

¶ 19    Banghart contends that the standard definition of F.O.B. in section 4-2-319(1)(a) did not apply because the contracts were "silent" on who would arrange and pay for shipping, and the parties modified the contracts by their course of performance since Mills routinely arranged and paid for shipping. But the contracts were not silent on this point; they expressly provided for who would be responsible for arranging and paying for shipping when they detailed that the price included "FOB sellers['] location." And, as we explain below, course of performance cannot modify the written contracts.

## 2.    Modification

¶ 20    Under the UCC, which governs contracts for the sale of goods like seeds, §§ 4-2-102(1), -105(1), C.R.S. 2025, express and unambiguous terms in contracts "may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement," § 4-2-202, C.R.S. 2025; they only "may be explained or supplemented . . . [b]y course of dealing, usage of trade, or by course of performance," § 4-2-202(a).

10

¶ 21    In dismissing the complaint, and later finding the SAC futile, the district court relied on this principle to conclude that course of performance could not modify the written contracts to contradict their plain and unambiguous terms.  Banghart, however, contends that the court misinterpreted *KN Energy, Inc. v. Great Western Sugar Co.*, 698 P.2d 769, 778-79 (Colo. 1985), in reaching that conclusion.  But the court correctly interpreted *KN Energy*, which reiterated that course of performance evidence "may be used as an aid to interpretation," but it may "not contradict the express terms of the writing."  *Id.*; *see* § 4-2-208(2); *see also Nelson v. Elway*, 908 P.2d 102, 107 (Colo. 1995) ("Even when extrinsic evidence is admissible to ascertain the intent of the parties, such evidence may not be used to demonstrate an intent that contradicts or adds to the intent expressed in the writing.").  With no ambiguity in the

11

contracts, any course of performance evidence is irrelevant because it contradicted the express terms of the written contracts.[4]

¶ 22    There is, as Banghart highlights, an exception for partially performed contracts, but only "[w]ith respect to goods for which payment has been made and accepted or which have been received and accepted." § 4-2-201(3)(c), C.R.S. 2025. Put another way, partial performance is limited to the goods that have been accepted — that is, to the past. *Id.*; *see also* U.C.C. § 2-201 cmt. 2 ("'Partial performance' as a substitute for the required memorandum can

---

[4] Banghart contends in the reply brief, seemingly for the first time, that an alleged oral agreement was made prior to the contracts. And it is true, as Banghart highlights, that *KN Energy, Inc. v. Great Western Sugar Co.*, 698 P.2d 769, 778 (Colo. 1985), provided that courts may consider the parties' prior course of dealing to interpret a contract's express terms and determine the parties' intent even if the agreement's express terms are not ambiguous. But "intent evidenced by such [prior] conduct is presumed to have been incorporated into the written contract *unless* the intent evidenced by the conduct has been 'carefully negated' by the written terms." *Id.* (emphasis added) (quoting § 4-2-202 official cmt. 2, C.R.S. 1984). The written terms of the contracts here are plain and unambiguous and negate any alleged prior agreement or contradictory course of dealing evidence. Moreover, to the extent that Banghart's arguments in the reply brief differ from the opening brief, we do not consider arguments raised for the first time in a reply brief. *See Meadow Homes Dev. Corp. v. Bowens*, 211 P.3d 743, 748 (Colo. App. 2009).

validate the contract only for the goods which have been accepted or for which payment has been made and accepted.").

### 3. The SAC Was Futile

¶ 23    The contracts unambiguously required Banghart to arrange and pay for shipment of the seeds, which had to be delivered by March 2023. *See Columbus Invs.*, 48 P.3d at 1228; *French*, ¶ 25. Banghart failed to do this and thereby breached the contracts, allowing Mills to reject later seed deliveries. *See* § 4-2-601(a), (c). Any alleged modifications to the contracts through the course of performance could not contradict the clear written terms of the contract. *See KN Energy*, 698 P.2d at 778-79. Banghart's proposed SAC failed for the same reasons its original complaint did.

### 4. Unpreserved Challenges

¶ 24    It was only on appeal that Banghart specifically argued that an oral agreement modified the contracts. Because Banghart did not preserve its oral modification claim for appeal, we decline to consider it. *See Gebert v. Sears, Roebuck & Co.*, 2023 COA 107, ¶ 25 ("To properly preserve an argument for appeal, the party asserting the argument must present 'the sum and substance of the argument' to the district court." (citation omitted)).

13

¶ 25    Banghart also did not adequately present its waiver argument to the district court, so we also decline to consider whether waiver applies. *See id.*; *Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 604 (Colo. App. 2007) (declining to address underdeveloped arguments raised as part of a "shotgun approach setting forth a multitude of arguments with little analysis").

## IV.    Attorney Fees

¶ 26    Finally, we address Mills' request for attorney fees. Mills argues that C.A.R. 38(b) and section 13-17-102(4) merit an award of appellate attorney fees because Banghart's appeal is frivolous and lacks substantial justification. Banghart contends that its appeal was grounded in precedent, brought in good faith, and necessary to protect its interests.

¶ 27    C.A.R. 38(b) provides, "If the appellate court determines that an appeal or cross-appeal is frivolous, it may award damages it deems appropriate, including attorney fees . . . ." Appeals can be frivolous "as filed where the judgment by the court below is so plainly correct and the legal authority contrary to appellant's position so clear that there is really no appealable issue" or can be frivolous "as argued where the appellant commits misconduct in

14

arguing the appeal." *SG Ints. I, Ltd. v. Kolbenschlag*, 2019 COA 115, ¶ 42. Frivolity is a high bar, and such determinations should "only be used to impose sanctions in clear and unequivocal cases when the appellant presents no rational argument, or when the appeal is prosecuted for the sole purpose of harassment or delay." *Id.*

¶ 28 Section 13-7-102(4), provides that courts "shall assess attorney fees" against those who bring actions lacking "substantial justification," meaning actions that are "substantially frivolous, substantially groundless, or substantially vexatious," § 13-17-101.5(1), C.R.S. 2025. As with C.A.R. 38(b), a frivolous claim "has no rational argument to support it based on the evidence or the law. A claim is groundless if there is no credible evidence to support" it, while "[a] vexatious claim or defense is one brought or maintained in bad faith." *Zivian v. Brooke-Hitching*, 28 P.3d 970, 974 (Colo. App. 2001).

¶ 29 Banghart's arguments on appeal were difficult to discern (as were the factual allegations, such as whether an oral agreement to modify the contracts existed), and the cited authority did not support Banghart's positions. But we do not conclude that Banghart's appeal clearly and unequivocally presented no rational

argument. Nor can we unequivocally say that there was no evidence to support Banghart's claims, that the appeal was brought in bad faith, or that Banghart committed misconduct in bringing the appeal. We have rejected Banghart's appellate claims, but they are not frivolous or substantially groundless. *See SG Ints.*, ¶ 42; *Zivian*, 28 P.3d at 974. Thus, we decline to award Mills appellate attorney fees.

## V. Disposition

¶ 30 We affirm the district court's denial of Banghart's motion for leave to file the SAC.

JUDGE BROWN and JUDGE MEIRINK concur.